**FORM TO BE USED BY PRISONERS IN FILING A COMPLAINT**
**UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. § 1983**

**FILED**

**IN THE UNITED STATES DISTRICT COURT**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**_____ DIVISION**     SEP 28 2006

**CASE NO. _____**     JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

I.   Parties

5:06CW00250 SWW/HDY

In item A below, place your full name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.

A.   Name of plaintiff: Tommy Henderson
     ADC # 93098

     Address: HC 62 Boy 300   Calico Rock, Ar 72519

     Name of plaintiff: _____
     ADC # _____

     Address: _____   This case assigned to District Judge Wright
     and to Magistrate Judge Young

     Name of plaintiff: _____
     ADC # _____

     Address: _____

In item B below, place the full name of the defendant in the first blank, his official position in the second blank, his place of employment in the third blank, and his address in the fourth blank.

B.   Name of defendant: Roland Anderson (John) MD

     Position: Medical Doctor Director

     Place of employment: Correctional Medical Services etal
     with adjourning corporate     etc. at ac
     Address: _____   P.o Box 4704 Pine bluff, Ar 7611

     Name of defendant: George Wilson / Larry Scott bluff
     Pine bluff
     Position: CMS Administrate / Doctor at bluff
     Clinic

     Place of employment: Cms of Arkansas

1

Address: _P.O. Box_____

Name of defendant: _Dottie Yarbough / DR Mohammed_____

Position: _CMS Infirmary Doctor / Director / Dentist_____

Place of employment: _City of Arkansas_____

Address: _ARA Central Office_____

Name of defendant: _Sandra Slasher / _____

Position: _RN, GSG / LPN of _____

Place of employment: _CMS_____

Address: _____

II.  Are you suing the defendants in:

☐  official capacity only
☐  personal capacity only
☑  both official and personal capacity

III.  Previous lawsuits

A   Have you begun other lawsuits in state or federal court dealing with the same facts involved in this action?

Yes ___   No ☒

B.  If your answer to A is yes, describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline.)

☐   Parties to the previous lawsuit:

Plaintiffs: _____

_____

Defendants: _____

_____

2

☐   Court (if federal court, name the district; if state court, name the county):

_____

☐   Docket Number: _____

☐   Name of judge to whom case was assigned: _____

☐   Disposition: (for example: Was the case dismissed? Was it appealed?
Is it still pending?) _____

☐   Approximate date of filing lawsuit: _____

☐   Approximate date of disposition: _____

IV.   Place of present confinement: *NCU*    _____

_____*Grady, Ar 12519-0300*_____

V.   At the time of the alleged incident(s), were you:
(check appropriate blank)

_____ in jail and still awaiting trial on pending criminal charges

✓ serving a sentence as a result of a judgment of conviction

_____ in jail for other reasons (e.g., alleged probation violation, etc.)
explain: _____

_____

VI.   The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, requires complete exhaustion
of administrative remedies of all claims asserted, prior to the filing of a lawsuit. There is a
prisoner grievance procedure in the Arkansas Department of Correction, and in several
county jails. Failure to complete the exhaustion process provided as to each of the claims
asserted in this complaint may result in the dismissal without prejudice of all the claims
raised in this complaint.

A.   Did you file a grievance or grievances presenting the facts set forth in this complaint?

Yes _✓_   No ___

B.   Did you completely exhaust the grievance(s) by appealing to all levels within the
grievance procedure?

Yes X No ___

If not, why? ______________________________

VII. Statement of claim

State here (as briefly as possible) the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.) USCA [illegible] USCA [illegible]

Dr [illegible]
[illegible] Delay, [illegible]
[illegible] -05 to [illegible] 2006 [illegible]
[illegible] due to lawsuits with inmates. [illegible]
[illegible]
[illegible]
[illegible] for The same as above of the Directors
Decision to go with Doctors opinion [illegible]
[illegible] offered a better decision but [illegible] to do so
[illegible] Dr Robert Scott [illegible]
[illegible] above statements as well as [illegible]
[illegible] that there was no infection
[illegible] Operation. [illegible]
[illegible] for a [illegible] CMS
[illegible] Staff [illegible] ending to the issues and
all [illegible] to all parties [illegible]

*[handwritten text, partially illegible]*

**VIII.   Relief**

State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.

*[handwritten text, partially illegible, including "Damages Awarded Compensatory, Punitive..."]*

I declare under penalty of perjury (18 U.S.C. § 1621) that the foregoing is true and correct.

Executed on this **2 6** day of **September**, 20 **06**.

*[signature]*

_____

_____

Signature(s) of plaintiff(s)

— Clerks Copy —

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### LITTLE ROCK, ARKANSAS DIVISION

TOMMY CHRIS HENDERSON                                    PLAINTIFF

VS.

CMS ET AL., CMS ADMINISTRATOR (AR) GEORGE WILSON,
CMS INFIRM. (SUP) DOTTIE YARBOUGH, SANDRA
STRATTON, RN, HSA OF VARNER UNIT, JOANN BURNETT,
LPN OF VARNER UNIT, LAURA MCCARTY (CMS MED
PROBLEM SOLVER OF VARNER UNIT), DR. ROLAND
ANDERSON M.D. (MEDICAL ADVISOR, MD FOR CMS),
DR. ROBERT SCOTT (CMS DOCTOR OF DERMOTT, TEMP
DR FOR VARNER), Dr. _____ Ahmed m.o,            DEFENDANTS

## NOTICE OF INTENT TO SUE

Now comes the Plaintiff, Tommy Henderson #93098, pro se. On or about April 15, 2006 or so, the petitioner started filing the ADC informal & grievance procedure to bring all state remedies that not only other complaints to follow, but complaints of the above mentioned CMS employees on their retaliating unprofessional conduct that they even violate the Florence Nightingale Oath, but also the Hippocratic Oath under the State of Arkansas Licensing Board for nurses, and conduct violations of the State of Arkansas Medical Board. Upon my exhibits up to 80 to 90 at this present time, this notice to you, upon this #4th complaint under all state, color of law, civil and constitutional rights that have been violated and will proceed in the foreseeable future all filings necessary to get relief, whether by award of damages, or what court and jury will decide, plus licensing & medical board decisions.

Now the complaint herewith in is the issues at hand that since Aug. 10th, 2006, also after June 2nd 2006, both RN, HSA, and LPN had a personal conspiring plot to have me sent to and away from all my liberty and freedom of getting a spiritual education of the Pals/program,

1

rehabilited programs of Varner Unit rehabilitated programs of Vo-Tech, which at the time I was in Vo-Tech in computer repair, also before my amputation food service. Total hrs between the both 200 hrs or so.

#2) From June 2nd, 2006 to Aug. 15th or so where I, the plaintiff was in the Pal faith base program. To which I was kicked out of the program because of the HSA, LPN defendants, Sandra Stratton/Ashcraft, Joann Burnett.

#3) From around Nov. 2005 to Aug. 15th of 2006, I was in the choir program, was a faithful participant in the program.

#4) From around April or May of 2006 was one of the chapel's sound technicians for the chapel, which I was kicked off of the team due to the issue that will be addressed.

#5) From around June 2nd to Aug. 15th or so my art card that I was starting to use, from the units treatment coordinator Ms. Waddy, that I was kicked off of the program due to the issues at hand.

#6) Letters and forwarding complaints to Ms. Wendy Kelly of ADC Central Office of the retaliating issues that both parties and Ms. McCarty knew of the issues and never contacted the CMS odubsmans nor Ms. Dottie Yarbough, or Mr. George Wilson nor Dr. Roland Anderson.

#7) Dr. Robert Scott's erroneous decision of listening to Ms. Stratton's plea to get me out of a wheel chair, forcefully when I believe I was not ready to get out of it, to where crutches was offered but I denied them due to major security problems at Varner of assaults etc., where I did not feel comfortable that taking the crutches could have caused me to be hurt and responsible for the use of them, to where if it was just a few days, it would be okay but my "serious need medically for the wheel chair was very vital to me to stay off of my foot.

#8) Felix Limb & Brace on a recent trip to them at DGU Clinic, even Mr. Felix told

2

me that in his professional opinion that I needed to be off my foot and in a wheel chair, but the report he taped was for a conference, to Mr. Roland Anderson to where his recommendation for me to be back in a wheel chair, and off my foot was very important of my foot with a fallen arch that it has been fallen since my release to Varner June 2nd 2006. Which Malvern Dr. Jonak, Ms. Dream Reddick Young failed to even review Dr. Felix's recommendations nor called or contacted what I told them what Dr. Felix's recommendations were.

#9)    Dr. Felix took my statements of what Ms. Stratton/Ashcraft and Ms. Burnett's conspiracy of retaliating by a witness in the infirmary, clearly overhearing a conversation from Ms. Stratton, Ashcraft & Ms. Burnett's plot to have my 1st disciplinary written on Aug. 10th 2006.

#10)    That witness even works at CMS a nurse who will testify in court that Ms. Stratton & Ms. Burnett's plot on Aug. 10th to write me up for 12-1 failure to obey rules and obey staff. To which Dr. Hubbard was addressing a hearing problem that I was having prior sick calls and the Aug. 5th Dr. visit on the 2nd time to diagnose the hearing problem.

#11) My witness statements of witness's, Vicent Valachi and inmate Morris, both diabetics who also will testify in court this issue of not hearing Ms. Burnett call for me.

#12)    With the implementing of Diabetics coming in to the infirmary for getting insulin at 3 pm this is the only time that diabetics do this. All other times diabetics get there insulin outside at the pill window, another change by Ms. Stratton/Ashcraft, due to her implementation of charges that had make this entering the infirmary with all the other activities going on, a mad house in the infirmary that it was even hard to hear Ms. Burnett in the first place.

#13)    My 2nd disciplinary by Ms. Burnett on Aug. 14, 2006 I was asking her if I could give her a "Christian card" where it was explaining what was going on with me that day and with

3

my honest to God's plea for compassion and mercy and to ask if she could pull the 1st disciplinary. She took the card, read it later, then showed Ms. Stratton/Ashcraft of what I did by legally asking Ms. Burnett to give her the card to where she took it out of context, even when I placed in the card that what ever she did "I loved her anyway" meaning in Christ not as I had ever desired to have a relationship with this 64 year old woman.

#14)   Even my previous times of just trying to encourage Ms. Burnett on two (2) other occasions of where I gave "Christian cards" praying for her, and hang in there that God would help her, and I at least appreciated her in her job and never took those to Ms. Stratton/Ashcraft in the past.

#15)   Then Ms. Stratton/Ashcraft having a conversation with Mr. Kim Luckett where two (2) inmates witnessing the fact that Ms. Stratton telling Mr. Luckett to keep me locked up in the hole as me 2nd disciplinary was Class IV 30 days punitive to where I got out in 4 days or less.

#16)   Why, the 1st time of Ms. Stratton's threats towards me were on one (1) occasion in June or July that Ms. Stratton saw me and Mr. Vicent Valachi talking quietly about our medical issues, while I was still in a wheel chair prior to her taking it away. Where other 11, or so inmates that are also diabetics witness what Ms. Stratton/Ashcraft pulled me away from Mr. Vicent Valachi, because she knew that he had many issues of CMS and won lawsuits, and to where she knew that with my knowledge of the law, and past issues and grievances that she also knew that I was proceeding to give CMS at Varner notices w/intent to sue, to give CMS at Varner the chance to fix things and did not, they even failed to follow up on reports, request and I even had to remind them of these issues.

#17)   Yes, I did say that I wanted Ms. Strattons job to others because of her retaliation, and also her poor professional conduct, towards that Ms. Gordon should be the infirmary

4

manager.

#18)   With violations of my civil, constitutional rights and what evidence, exhibits, and the foreseeable medical expert witness's, and what witness's both state, CMS, inmates of over 200 Varner inmates who I have names and ADC #'s and a log of when, where, how that alone retaliation.

#1)   Retaliation – of both nurses, the problem solver knowing the issue and not reporting it, because of acts taken against my grievances in retaliation for exercise of constitutional right state claim under § 1983 and § 1997, of federal case when retaliatory acts do not themselves violate constitutional rights, but state "color of law", and other claims.

Thomas vs. Hill N.D. Ind. 1997, 963 F.Supp 753

#2)   Episodic Act or omission –

Scott vs. Moore C.A.5 (Tex.) 1997, 114 F.3d 51

#3)   Cruel and Unusual Punishment –

Hudgins vs. Debruyn, SD. Ind. 1996, 992 F.Supp 114

#4)   Negligence:

Hathaway vs. Coughlin, C.A.2 (NY) 1996, 99 F.3d 550

#5)   Grievance Procedures: Justice v. Coughlin, N.D. N.Y. 1996, 941 F.Supp 1312

#6)   Deliberate indifference: Estate of Cole by Pardue vs. Fromm, C.A.7 (Ind), 117 S.Ct 945, 519 U.S. 1109, 136 L.Ed.2d 834

#7)   Threats by officials

Arnold vs. Groose C.A.8 (MO) 1997, 109 F3d 1292

#8)   Temporary loss of privileges:

Liberty Interest & Freedom

Warren vs. Irvin WD N.Y 1997, 935 F.Supp 350

#9)   False Information

James vs. Robinson E.D VA 1994, 863 F.Supp 275

Affirmed 45 F.3d 426

#10)   Conspiracy

Fantasia vs. Kinsella N.D. Ill 1997, 956 F.Supp 1409

#11)   Harassment

Ellis vs. Meade D. ME. 1995, 887 F.Supp 324

#12)   Cover ups:

Gonsolves vs. City of New Bedford, D. Mass 1996 939 F.Supp 921

#13)   Retaliation Against Jail House Lawyer

Tight vs. Wall C.A.5 (LA) 1996, 100 F3d 41.

#14)   Malicious treatment

Sappington vs. Virich, E.D. Tex 1994, 868 F.Supp 194

#15)   Increase in risk of injury and disease

Hill vs. Marshall, C.A. 6 (Ohio) 1992, 962 F.2d 1209, 113 S.Ct. 2992, [main
volume] 509 U.S. 903, 125 L.Ed.2d 687

#16)   Retaliatory transfers:

Goff vs. Burton, C.A.8 (Iowa) 1996, 91 F.3d 1188; Pratt vs. Rowland C.A.9 (Cal)
1995, 65 F.3d 802; Talbert vs. Hinkle, E.D. VA 1997, 961 F.Supp 904

#17)   Maguire vs. Coughlin, N.D. N.Y. 1995, 901 F.Supp 101

#18)   Banks vs. Manroia, N.D. N.Y. 1995, 890 F.Supp 95

#19)   Grounds for transfers: not in barrage of grievances

Ward vs. Dyke, C.A. 6 (Mich) 1995, 58 F.3d 271, 116 S.Ct 524, 516 U.S. 991, 133 L.Ed2d 431

#20)   Psychological problems

Morstad v. Dept. of Corrections and Rehabilitation C.A. 8 (N.D.) 1998, 147 F.3d 741

#21)   Freedom of Speech violations of where Ms. Stratton/Ashcraft threaten me to stop talking to inmates specially Vicent Valachi, where both of us was violated of this USCA constitutional right of Amendment #1.

- Burnham vs. Ianni, C.A. 8 (Minn) 1997, 119 F.3d 668

- Qvyjt vs. Lin, N.D. Ill, 1997, 953 F.Supp 244.

- Rodriguez v Phillips, C.A. 2 (N.Y) 1995, 66 F.3d 470

#19)   Construction

- Backland vs. Hesson, D. (Minn) 1995, 904 F.Supp, 964, reversed 104 F.3d 1031, 176 F.R.D 316

- Americans with Disability Act:

   Barlett vs. New York State Board of Law Examiners S.D. NY. 1997, 920 F.Supp 1094, 119 S.Ct. 2388, 226 F.3d 69

#20)   Civil Rights conspiracy provisions

Harrington vs. Lawer, D. N.J. 1995, 888 F.Supp 616, 893 F.Supp 352

#21   Rehabilitation Act of 1973 & Individuals Disability Ed. Act

W.B. vs. Matola C.A.3 (NJ) 1995, 67 F.3d 484

#22)   Continuing Violation

Wise vs. New York City Police Dept S.D. N.Y. 1996, 928 F.Supp 355

#23)   A centra IV line in my chest from April 20th to Sept. 11, 2006.

Wherefore, what makes the above findings and conclusions with Rule 52 Fed. R. Civ. P. In order to determine of numerous civil & constitutional rights, and laws Rules 58 Fed. R. Civ. P. to enter a judgment for the plaintiff in the sum of "undermine" amount of damages for past, present, foreseeable problems which the plaintiff still has problems of the results of 8 to 9 doctors that have fully negligence, delay of treatment, delay's, deliberate indifference, even the possibility of medical malpractice, ongoing risks of injury and what liberty and freedom to live a normal life, ahs to be a major also concern that what I use to do skills wise that a whole new career and damages requested for life of this major issue of my foot, ankle, leg, other internal issue that both state, CMS is responsible for.

Respectfully submitted

_____
Tommy Henderson 93098

STATE OF ARKANSAS )
                  ) SS
COUNTY OF _____ )

SUBSCRIBED AND SWORN TO BEFORE ME, a Notary Public, on this _____ day of _____, 2006.

_____
Notary Public

My commission expires: _____

8

## Certificate of Service

I, Tommy Henderson, the Plaintiff herein, do herby certify that on this **25** day of

**September** 2006 a copy of the foregoing notice was served on the defendants or his

attorney, by mailing same with proper postage affixed to defendants or his attorney at:

(1)   Cms Central
      P.O. Box 9107
      Pine Bluff, Ar 71611
      Cure Mail

(2)   Cms Harris
      PO Box 600
      Grady, Ar 71644-0600

      Tommy Henderson
      ~~Defendant~~
      Plaintiff

9

## GRIEVANCE FORM - (Attachment 1A) State Medical Board Complaint

(# 1)

UNIT/CENTER _NLU_

FOR OFFICE USE ONLY

Grv. # _____

Date Received _____

Grievance Code: _____

**PLEASE PRINT**
Name __Tommy Henderson__ ADC# __93098__ Brks ____ Job Assignment ____ _Isolation_

IS THIS GRIEVANCE A MEDICAL GRIEVANCE? Yes __X__ No _____

*********************************************************************************

**All complaints/concerns should first be handled informally before proceeding to the formal grievance procedure.**

## THE ORIGINAL INFORMAL RESOLUTION FORM SHALL BE ATTACHED

**Informal Action Taken**

Have you discussed this problem with your designated problem-solver? Yes __X__ No __ If yes, give date _____

Why do you feel the informal resolution was unsuccessful? _Attached copies of grievances with_
_the issues of medical malpractice, medical negligence, deliberate_
_indifference, Delays in treatment, Delays, unreasonable care,_
_inadequate care, lack of knowledge_

*********************************************************************************

Please give a **BRIEF**, clear statement of your grievance. This statement must be specific as to the complaint, **dates**, places, personnel involved, how **you** were affected and what you want to resolve the issue. **One issue** or incident per grievance. Additional pages or forms will **not** be allowed and if attached, will result in the automatic rejection of this grievance without content review. _ex: Dr. Roland John Anderson, MD._

1) Olabode Olumofin on 10-10-05 + Feb 23rd of 06 failed to see that my
Ogreat toe was clearly infected. Nor did he follow up on ANP Janice
Alexander or ANP Rebecca Johnson decision of how to treat me while
I was at OGV on Intake 10-10-05 thru 10-17-05, only had Iodine soaps
and dressing changes. No culture to speak of or no treatment or medicaments to
prove that my wound was almost healed until I had to walk out
at OGV. #2) Feb 23rd on so - Varner ANP Connie Hubbard recommended long
term antibiotic care after she gave me 4 strong shots of antibiotics when I
med's when Dr. Olumofin gave me 2½ days of I.V. sent me to emergency
infirmary for 2½ days, needed bedspace. To plea cummins Dr. ____
(Sudeea) Dr. Dosh released me from Dr. Roland Anderson's decision.

IS THIS AN EMERGENCY SITUATION? YES __X__ NO __ If yes, why? _Feb 28, March 1, D006 on so_
_10 Days later no wheel chair etc, could not walk again because of swelling_

(An emergency situation is one in which you may be subject to a substantial risk or physical harm. It should not be declared for ordinary problems that are not of a serious nature.) If you marked yes, you may give this completed form to any officer or department employee who shall sign the attached emergency receipt, give you the receipt and deliver it without undue delay to the ARO, the Warden/Center Supervisor or, in their absence, to the Unit/Center Assistant Warden. REPRISALS: If you are harmed or threatened because of your use of the grievance form, report it immediately to the Warden.

_Tommy Henderson_                              _9-25-06_
**INMATE SIGNATURE**                            **DATE**

**(TO BE FILLED OUT BY THE RECEIVING OFFICER)**

### RECEIPT FOR EMERGENCY SITUATIONS

OFFICER (Please Print) _____ Signature _____

FROM WHICH INMATE? _____ ADC# _____

DATE: _____ TIME: _____

81C

## GRIEVANCE FORM - (Attachment 1A) *State medical Board complaint*

**UNIT/CENTER** _NCU_

#2

FOR OFFICE USE ONLY

Grv. # _____

Date Received _____

Grievance Code: _____

PLEASE PRINT
Name _Tommy Henderson_ ADC# _93098_ Brks _Punitive I solution_ Job Assignment

IS THIS GRIEVANCE A MEDICAL GRIEVANCE? Yes __X__ No _____

*******************************************************************

**All complaints/concerns should first be handled informally before proceeding to the formal grievance procedure.**

### THE ORIGINAL INFORMAL RESOLUTION FORM SHALL BE ATTACHED

**Informal Action Taken** _never did Doctor ask for my previous medical history_

Have you discussed this problem with your designated problem-solver? Yes _X_ No __ If yes, give date

Why do you feel the informal resolution was unsuccessful? _A complaint of nelgence, DElay of treatment, medical malpractice of Lack of AntiBiodics from a DiAbetic Ulcer that grew bigger, because when you walk approx 2 miles a day because you halt to, Does the wound heal at all?_

_____ *Deliberate Indifference to Betrays*

Please give a **BRIEF**, clear statement of your grievance. This statement must be specific as to the complaint, **dates**, places, personnel involved, how **you** were affected and what you want to resolve the issue. **One issue** or incident per grievance. Additional pages or forms will **not** be allowed and if attached, will result in the automatic rejection of this grievance without content review. *Also Dr. Roland John Anderson M.D.*

(1) _Dr. Mohammed Ahmed on 10-17-05 to Feb of 06 did not aggressively or give any Ant Biodics towards an infection that I had due to a diabetic Ulcer that was almost healed 10-10-05. Dr Ahmed fa led to give me a wheelchair or crutches, my ☉ great toe started getting bigger, The wound was cleaning, Daily dressings, Biodine soaks, walking 2 miles a day, just to eat, get pills, go in for Diabetes, Records attached with issues of all Doctors._

2) _Dr. Alex Dellinger of LR had all my records of its treatment in rec of 05, Even Medical Exam showing no Damage to the ☉ great toe, Neligence, not even reasonable care, Then upon my arrival to DGU on 10-10-05 no foot support to keep ☉ great toe off pressure, to the toe._

IS THIS AN EMERGENCY SITUATION? YES _X_ NO ___ If yes, why? _____
_Due to the nature of issue This caused my amputation of ☉ great toe._

(An emergency situation is one in which you may be subject to a substantial risk of physical harm. It should not be declared for ordinary problems that are not of a serious nature.) If you marked yes, you may give this completed form to any officer or department employee who shall sign the attached emergency receipt, give you the receipt and deliver it without undue delay to the ARO, the Warden/Center Supervisor or, in their absence, the Unit/Center Assistant Warden. REPRISALS If you are harmed or threatened because of your use of the grievance form, report it immediately to the Warden.

_Tommy Henderson_                    _9-24-06_

**INMATE SIGNATURE**                    **DATE**

**(TO BE FILLED OUT BY THE RECEIVING OFFICER)**

### RECEIPT FOR EMERGENCY SITUATIONS

OFFICER (Please Print) _____ Signature _____

FROM WHICH INMATE? _____ ADC# _____

DATE: _____ TIME: _____

81C

**GRIEVANCE FORM - (Attachment 1A)** *State medical Board complaint*

#3)

UNIT/CENTER _MxU_ /

| FOR OFFICE USE ONLY |
|---|
| Grv. # _____ |
| Date Received _____ |
| Grievance Code: _____ |

PLEASE PRINT.
Name ___Tommy Henderson___ ADC# _93098_ Brks __Isolation__ Job Assignment _____

IS THIS GRIEVANCE A MEDICAL GRIEVANCE?   Yes _X_   No _____

*****************************************************************************************

**All complaints/concerns should first be handled informally before proceeding to the formal grievance procedure.**

## THE ORIGINAL INFORMAL RESOLUTION FORM SHALL BE ATTACHED

**Informal Action Taken**

Have you discussed this problem with your designated problem-solver? Yes _X_ No __ If yes, give date _See_

Why do you feel the informal resolution was unsuccessful? _Attached copies of grievances of Dr. Robert Scotts M.D. statements that on Dec 20, 2005 I did have an infection in my (L)great toe, & medical records and that His pure neglect to put me in a wheelchair, or give me I.V's_

*****************************************************************************************
_medical malpractice, neglect, delay in treatment, etc,_
Please give a **BRIEF**, clear statement of your grievance. This statement must be specific as to the complaint, **dates**, places, personnel involved, how **you** were affected and what you want to resolve the issue. **One issue** or incident per grievance. Additional pages or forms will **not** be allowed and if attached, will result in the automatic rejection of this grievance without content review.

1) Dr Roland John Andersons & Dr Robert Scotts of Dermott, on 12-20-05 decided that my (L)great toe was not infected, but it was, Dr Connie Hubbard of Varner Recommended that I see Dr Scott a so-called wound specialist, stated that I had NOT any infection in my (L) great toe, but ordered a insole of a so-called support of putting my (L)great toe off of pressure to the floors after walking 2 miles a day from 10-10-05 to 12-20-05 without any support on the toe. How could the wound heal. Dr Crane the physicians script for me was Bacitracin soaks, Daily dressings. This staff (over the Infirmia) will testify Re: put Re: the toe, Also Nurse Betty Harrison of Varner will also verify Re: what it looked like in the county Jail + (L)ns

IS THIS AN EMERGENCY SITUATION? YES _X_ NO ___ If yes, why? _failure to treat me with my (L) great toe to where it got complicated on April 20, 2006_

(An emergency situation is one in which you may be subject to a substantial risk of physical harm. It should not be declared for ordinary problems that are not of a serious nature.) If you marked yes, you may give this completed form to any officer or department employee who shall sign the attached emergency receipt, give you the receipt and deliver it without undue delay to the ARO, the Warden/Center Supervisor or, in their absence. to the Unit/Center Assistant Warden. REPRISALS: If you are harmed or threatened because of your use of the grievance form, report it immediately to the Warden.

_Tommy Henderson_                                    _9-25-06_

**INMATE SIGNATURE**                                    **DATE**

(TO BE FILLED OUT BY THE RECEIVING OFFICER)

## RECEIPT FOR EMERGENCY SITUATIONS

OFFICER (Please Print) _____Signature _____

FROM WHICH INMATE? _____ ADC# _____

DATE: _____ TIME: _____

81c

# Push to cut costs poses risks—
# and not just to inmates

Inmates line up outside the Fulton Reception and Diagnostic Center, the first stop for new arrivals in a Missouri prison system. Inmates are stripped, washed, showered, deloused, photographed and fingerprinted. The next step is medical analysis.

*continued from previous page*

## Faces of inmates who died in custody

*The Post-Dispatch found cases around the country where people died after going to prisons or jails where private companies provided the medical care. Some of these stories are told in this section.*



**Dorothy Masters**
Age: 45
Location: Renz
Correctional Center
in Missouri for
forgery
conviction.
Date of death:
April 5, 1994.
Circumstances:
Her family claims
she suffered from
hypotension, leading
to cardiac arrest, after
a prison doctor
prescribed a drug
that interacted with
medication she was
taking.
Provider:
Correctional Medical
Services
CMS comment:
"The medical
examiner found no
evidence to indicate
that her death was
related to any
medications." The
company also said its
staff "was extremely
attentive to her
needs," and acted
"promptly and
appropriately" to
deal with her medical
condition.
Legal status:
Masters' daughter
sued CMS and the
doctor for failing to
monitor her blood
pressure after
prescribing the drug.
The case was settled
for $48,500 and
sealed this summer.

Page 16

## 'Unusual punishments'

Inmates used to call government-run prison infirmaries "the butcher shop." These are yielding to "HMOs behind bars," as some in the industry call their programs, referring to health maintenance organizations that offer pre-paid medical services to subscribers in the outside world.

An encounter with HMOs behind bars can become a death sentence, even for inmates whose cases have not yet gone to trial or who have been convicted of relatively minor crimes. Many are young people, with curable conditions.

Consider:

■ Calvin Moore, 18, died in February 1996 after serving only a few weeks of a two-year burglary sentence in the Kilby Correctional Facility in Alabama. He lost more than 50 pounds in less than a month and suffered symptoms of severe mental illness, dehydration and starvation. CMS was responsible for his health care.

■ Diane Nelson, 46, mother of three, died of a heart attack in March 1994 in the Pinellas County Jail, in Florida, after three nurses with Prison Health Services Inc. ignored her repeated requests for heart medication prescribed by her doctor. Nelson had been arrested for slapping her teen-age daughter. As Nelson collapsed, a nurse yelled: "Stop the theatrics."

■ Charles Guffey, 39, died of a perforated ulcer in October 1997 in the Tulsa County Adult Detention Center, in Oklahoma, after nurses working for Wexford Health Sources Inc. allegedly ignored his pleas about severe abdominal pain. Jailers said a nurse told them to return Guffey to his cell and "let inmate justice take its course." He had been arrested for failing to appear in court on drug charges.

■ Nancy Blumenthal, 17, committed suicide in May 1996 in the Westchester County Jail, in Valhalla, N.Y., after a doctor working for EMSA Correctional Care took her off of an anti-depressant drug following a 20-minute interview, even though she was suicidal. Blumenthal had been jailed for robbery and threatening her mother with a kitchen knife.

These deaths hint at a broader system of "unusual punishments" prohibited by the Eighth Amendment of the Constitution. They point to an attitude that could threaten the Hippocratic Oath, the creed of the medical profession, which says practitioners must keep "free from all intentional wrongdoing and harm" no matter where they work.

## Disciplined doctors

The Post-Dispatch also found that:

■ Some of the industry's leaders are putting inmate health care in the hands of doctors who have been disciplined by state medical licensing boards or even committed crimes themselves.

■ In some cases, disciplined doctors who aren't allowed to practice on the general public are permitted to do so behind bars — even if they have lost their Drug Enforcement Administration license for prescribing controlled substances. That means they can't

*continued on next page*

## Criticisms of CMS

■ U.S. Justice Department, 1993: said care at the Norfolk City Jail was "grossly inadequate and fails to meet the serious needs of inmates."

CMS: "faced numerous challenges outside of our control," including "an antiquated facility, extreme overcrowding [and] inadequate funding."

■ Franklin County Commission, Columbus, Ohio, 1996: found 10 deficiencies with care in the county jail system, including staffing levels that fell short.

CMS: "significantly increased" staffing "at the start of the contract and brought the jail into compliance with the National Commission on Correctional Health Care and others."

■ R. Ronald Sharsky, court-appointed monitor for Georgia prisons, 1994: CMS was running a "medical gulag."

CMS: "The report is filled with numerous inaccuracies."

■ Nevada Board of Medical Examiners Investigative committee, 1995: CMS's medical director at the Washoe County Detention Center, in Reno, allowed lower-level nurses to "practice medicine and manage medical situations ... well beyond the capability and training of professional nurses."

CMS: The medical director "is no longer associated with CMS." If the allegations are true "the doctor 'violated CMS policies and procedures.'"

■ S. Jays Anno, consultant for Pulaski County Jail, Little Rock, Ark., 1993: A wide range of problems, including "inadequate" management of infectious diseases, delays in health screenings" and incomplete records.

CMS: Within one week of the consultant's survey, NCCHC inspectors visited the jail and gave it accreditation. The NCCHC survey "provided a more accurate evaluation."

■ Virginia legislative audit commission, 1994: CMS failed to provide "adequate physician coverage" at the Greensville Correctional Center, the state's largest prison.

CMS: Greensville has been accredited by the NCCHC. Virginia has contracted with CMS at three other state facilities. "a good indication that we provide quality services."

prescribe 'something as simple as Tylenol 3 for a toothache.'

■ Distant administrators intervene in the practice of medicine by doctors, often second-guessing their decisions on economic grounds. The extra steps can delay treatment or approval for medication.

■ A culture of skepticism permeates correctional health care. Inmates fake illness frequently, which can leave nurses and doctors blind to real sickness.

■ The National Commission on Correctional Health Care, which sets standards and accredits prison and jail health care operations, does not serve as the watchdog that private companies claim.

■ Medical records are sometimes altered. Records have been changed to falsely indicate doctors gave medical orders when in fact a nurse did.

Medically questionable deaths behind bars aren't exclusive to jails and prisons with privatized care. For example, an inmate in the St. Louis Workhouse died in May from complications of asthma after treatment was delayed.

And in July, a U.S. district judge in St. Louis awarded $781,000 to the family of a Cape Girardeau man. He hanged himself in a federal prison in Georgia after public officials there withdrew his anti-anxiety medication, allegedly to save money.

"It's not like we've always had this wonderful government-run system and suddenly made it bad," said Jenni Gainsborough, director of the American Civil Liberties Union's National Prison Project in Washington. "We've just added a layer that makes a bad system worse."

Critics of the private companies say the industry's astounding growth and drive for profit raise extra cautionary flags.

"Appalling things are going on in some of these facilities in the name of efficiency, saving money and managed care," said Michael Vaughn, a professor of criminal justice at Georgia State University, in Atlanta. Vaughn grew up in Lebanon, Mo., and went to Central Missouri State University. He analyzes court cases involving prison and jail health care issues and served as an associate editor of the scholarly journal "Justice Quarterly."

"For every death there are hundreds of cases of inmates in these correctional facilities who are receiving substandard care," he said. "I've seen enough smoke to know that fires are definitely burning."

Michael Pfeiffer, CMS's chief operating officer, disagrees with those who say the deaths are the tip of an iceberg in a failing system.

"I don't believe that this is some underlying systemic problem," Pfeiffer said.

Of the criticism that the companies have to deny care to make profit, Pfeiffer said: "That's crap, OK? Plain and simple. That's not true. You don't have to deny care to get a better deal from pharmaceuticals, negotiate with hospitals, do focus buying and do other kinds of things related to economies of scale."

## A threat to you

Dr. Thomas Conklin of the Hampden County Correctional Center, in Ludlow, Mass., knows that providing medical care to inmates is not a popular idea.

"After all," Conklin said, "many people say prisoners are scum — why should we provide free medical care to criminals when our own children can't get free medical care?"

Inmates are inescapably part of the American community. Diseases don't respect bars. Each year in the United States 12 million inmates return to society, bringing with them a broad range of diseases that are often infectious.

Without effective medical intervention in jails and prisons, released inmates "pose a threat to the public health of the community," said Edward Harrison, president of the National Commission on Correctional Health Care.

Poor health in inmates also threatens visitors, guards and other workers in prisons and jails. Inmate anger about health care has led to riots in some states.

In addition:

■ The explosion of inmates has created a prison population bomb — a growing body of older, sicker inmates whose increasingly serious health care problems are likely to push costs even higher.

■ Adequate health care for inmates is mandated by the U.S. Constitution and the Hippocratic Oath.

■ If not well cared for in prison, a released inmate's health problems add cost to the nation's health care tab.

> Into whatsoever houses I enter, I will do so to help the sick, keeping myself free from all intentional wrongdoing and harm.
>
> —From the Hippocratic Oath

## A social problem

The changes in correctional health care are occurring against a backdrop of rising numbers of inmates in prisons and jails, longer sentences and escalating costs for health care.

When American voters decided two decades ago to get tough on crime, they began building the largest prison system in the world. In 1990, prisons and jails held about a half-million inmates. By 1997 that number had more than tripled, to 1.7 million.

Nonviolent offenders accounted for much of the influx. Prisons are home largely to the poor and uneducated and people with drug habits and broken families.

Many are in poor health and haven't seen a doctor since some respects, they are lucky to get the medical treatment, eye

continued on next page



Dennis Mandl
Age: 45
Location: Montgomery County (Pa.) Correctional Facility, for writing phony prescriptions.
Date of death: Nov. 27, 1995
Circumstances: Mandl attempted suicide once, while jailed by jumping headfirst from an upper bunk. He allegedly told prison medical workers he was depressed and suicidal and undergoing drug dependency withdrawal. Jail policy was to check suicidal inmates every 15 minutes, but he observed that frequently. He hanged himself with his jail jumpsuit.
Provider: EMSA Correctional Care.
EMSA comment: The company declined to comment.
Legal status: Mandl's widow, Denise Giandonato, reached a confidential settlement with EMSA in October 1997. Her lawsuit against the county is scheduled



A guard sits nearby while a prisoner undergoes dental care in Chester, Illinois at Menard Correctional Center.   J.B. Forbes/Post-Dispatch

# HEALTH CARE BEHIND BARS

*continued from pervious page*



**Ronnie Valentine**
Age: 42
Location: Franklin County (Ohio) jail, on a traffic violation, fleeing police and drug trafficking
Date of death: Sept. 17, 1996
Circumstances: Valentine, who had a history of hypertension, began to vomit blood shortly after his arrest on Sept. 13. He died four days later of esophageal tearing with gastrointestinal hemorrhaging.
Provider: Correctional Medical Services
CMS comment: The company declined comment.
Legal status: His family is suing CMS, the county and a doctor for violating accepted standards of care in treatment.



**David Jones**
Age: 42
Location: Greenville (Va.) Correctional Center, conviction for kidnapping and aggravated sexual battery.
Date of death: March 30, 1995
Circumstances: Jones died of blood poisoning after a diabetic ulcer on his foot became infected.
Provider: Correctional Medical Services.
CMS comment: The company said "health care professionals were attentive to Mr. Jones' medical needs."
Legal status: Jones' widow sued the state and company. At issue is whether CMS has sovereign immunity from such lawsuits. CMS claims the case has been dismissed and is awaiting a final order. The attorney for Myrtle Jones said a final order has not been signed, so the case is still considered open.

**Page 18**

exams and dental care provided in a prison.

Roughly one in 10 inmates today is mentally ill. Many of them ended up in prisons and jails when states closed mental hospitals in the 1970s. In many cases, prison worsens a mentally ill person's condition by the time he returns to the street.

Some workers in both public and private health units have bought into a river of public anti-prisoner sentiment that simply putting an inmate in prison isn't sufficient punishment, Vaughn said.

"They turn the Hippocratic Oath on its head," he said. "They become harmers instead of healers."

In an article to be published in 1999 in Justice Quarterly, Vaughn and Linda Smith, a researcher at Kennesaw State University, near Atlanta, identified six kinds of "ill-treatment and torture" recently inflicted by a slew of private providers at an unidentified county jail.

Among other examples, the researchers found evidence that nurses ignored the pregnancy problems of some inmates, withheld medications for AIDS, delayed treatment for hernias and abruptly took a Vietnam veteran off his psychiatric medicine to treat post-traumatic stress disorder — a move that creates severe withdrawal symptoms.

## A history of abuse

There's a long history of unusual punishment by medical personnel in prisons and jails across the country.

After World War II, prisoners were used as "volunteers" in experiments on medical problems ranging from athlete's foot to radiation exposure. In 1956, researchers injected cancer cells into more than 100 inmates in Ohio to see how their bodies would respond.

In Arkansas, state prison doctors tolerated medieval torture and murder through the 1960s — and in some cases became involved. A doctor at the Tucker State Prison Farm created the "Tucker telephone," an electric device strapped to the inmate's genitals to inflict pain short of passing out.

Arkansas prison doctors and state officials concealed beating deaths by listing the causes of death as "malaria," "heart ailments" and "unknown."

In the 1970s, correctional health services improved as the American Medical Association developed standards for health care. Professional organizations set up training programs and other aids.

The case of a Texas inmate with back pain led to a 1976 Supreme Court decision known as "Estelle v. Gamble." The court agreed that the government had an obligation to provide "adequate medical care" to prisoners.

But the court set a high standard for prisoners to prove violations of that constitutional right. The judges said "deliberate indifference to serious medical needs of prisoners," if proven, constituted "wanton infliction of pain."

The get-tough policy swelled the prison population in the 1980s.

"The sheer numbers strained resources, especially as shrinking public funding bases during the late 1980s and early 1990s limited staff increases and equipment purchases," said Dr. Kim Marie Thornburn, an expert in correctional health care with the Spokane Regional Health District. "Health care facilities in jails and prisons grew more cramped and inadequate."

## The bottom line

Enter the prison HMOs.

Of the estimated $3.75 billion a year now spent nationwide on correctional health care, managed care companies account for upwards of 25 percent, say industry analysts. They put the industry's net profit margin at a scant 1.5 percent to 2 percent.

The companies say they offer many advantages over government-run correctional health agencies. They streamline the on-site health care operation, cutting the need for visits to hospitals.

They have an available pool of doctors, nurses and other workers that can fill gaps in staffing more quickly than government bureaucracies. The private contract makes it easier for government officials to predict costs and focus on security.

A company can provide health care for 5 to 15 percent less, depending on the prison or jail.

Correctional health care companies "save hundreds of millions of taxpayer dollars at the state and local levels," Dr. Stuart Shapiro, president of Prison Health Services of New Castle, Del., testified before Congress.

Critics say there's no proof of that. And they warn that the growth in privatized correctional health care is part of a burgeoning "prison industrial complex." That refers to a network of companies and their subsidiaries that manage private prisons and provide such services as health care, food and equipment.

For a company paid a fixed rate, every dollar not spent on health care is profit.

Among other issues raised by privatizing prison health care is whether the pursuit of profit — a tradition as American as apple pie — has led to dishonest practices. Government agencies have found that some companies exaggerate the amount of medical care they provide or leave positions unfilled.

In Massachusetts, for example, the state auditor in 1996 accused EMSA of overcharging the state $1.5 million by inflating the number of AIDS patients and the cost of their treatment. The company filed false and questionable invoices between January 1992 and June 1994, said auditor Joe DeNucci.



Inmate population

A spokesman for the company said it got the number of inmates with AIDS from the Department of Corrections, "so there was no way possible we could inflate that number." The auditor stood by his report.

In Florida, in a 1995 contract with one of its doctors, EMSA offered a $250 bonus each time he eliminated an emergency room visit for a Pinellas County jail inmate.

EMSA believed the bonus was the doctor's "stipend for being on call" and that it was justified to cut costs and security concerns. The sheriff believed it a clear incentive to cut care.

Such incentives are given by a few companies, said B. Jaye Anno, an authority on correctional health care who objects to the practice.

"This sets the stage for a potential conflict between what may be in the patients' best interest and continued on next page

# HEALTH CARE BEHIND BARS





**Melony Bird**
Age: 24
Location: Pinellas County (Fla.) jail, for drug and prostitution charges.
Date of death: April 3, 1996
Circumstances: Bird was a drug addict with a history of heart problems. An electrocardiogram performed at the jail showed a possible heart attack. She was taken to an emergency room 13 hours later. She died at the hospital.
Provider: EMSA Correctional Care.
EMSA comment: The company declined to comment.
Legal status: No record of legal action.



*continued from pervious page*

what may be in the self-interest of the physician," Anno said.

In Illinois in July, the regional administrator for a national firm complained in a memo to the medical director of a state prison that he had gone over his monthly budget.

"I will not blindly approve an over-budgeted supply requisition simply because you need it," the administrator said. "...We are in severe financial difficulty at your facility and the pattern of spending more than we have allocated is what got us here. You must be more cost conscious than ever."

In Oklahoma, licensed practical nurse Sherry Burkybile said a Tulsa jail often went without basic medical supplies on the night shift. If nurses ran out of peroxide, "you used water. It don't work as good, but you improvised."

Bandages? "Ran out. There's nothing you can do. You put a paper towel on it ... I ripped up a sheet and got in trouble because that was state property."

Burkybile's statements came in a December deposition about jail care and her former employer, Wexford. She explained the bureaucratic maze for sending an inmate to the emergency room.

If an inmate showed signs of a potential heart attack — dizzy, chest pain, left arm hurting — Burkybile had to be convinced the inmate wasn't faking. She didn't want to wake her supervisor at home over a false alarm.

She also had to get permission from the director of nursing or a jail administrator to call the doctor. Sometimes, as precious time elapsed, Burkybile had to page these people and wait for a reply. Only then could she call the sheriff's deputy to pick up the inmate.

"If I was lucky and I had a commander on that was good, he would call transport, and transport would come and get them, but it would take at least two hours," she said.



An inmate at Menard Correctional Center in Illinois has been in a vegetative state for four years. The administrator for Health Professionals Inc. at the prison calls him "our child."

Menard isolation inmate Lenny Shepard pays a visit to Dr. Steve Platt at the prison clinic. He was complaining of sunburn. Medical staff workers say inmates go to great lengths to get out of isolation, even briefly.

The medical staff cut costs wherever they could, she said. They would distribute expired medicine or keep an inmate's personal medicine on the shelf even after that inmate had left jail.

## No choice

For inmates, this bottom-line mentality can lead to abuses.

In the free world, a sick person has choices — even in an HMO patient may be able to switch doctors or health plans if unhappy.

A patient in prison has no choice. And no consumer advocate.

"If you think of every evil that exists in HMOs and multiply it by 10, you'll understand what happens with CMS," said Richard Sindel, a Clayton lawyer who has battled the company on behalf of female inmates in Missouri. "Not only do they have a captive audience, literally and figuratively, they have one that has absolutely no power at all."

Jacqueline Reich, Lorenzo Ingram and Henry Simmons — and all the others, if they were alive today — might be inclined to



**John Brundage**
Age: 52
Location: Pinellas County (Fla.) jail, for a minor traffic violation and subsequent scuffle with police.
Circumstances: Brundage was stopped by deputies for a bent license plate and was jailed after a struggle with them. He died of a ruptured intestine.
Date of death: Sept. 9, 1991.
Provider: Correctional Medical services.
CMS comment: After the struggle, Brundage was treated at a hospital, which "did not disclose any internal or life-threatening injuries or conditions." The company said when Brundage's condition became unstable, "CMS health care professionals called for help."

# Missouri pri

# e has little



J.B. Fosbeck/POST-DISPATCH

vnale Jerry Lawrence from Poplar Bluff, Mo., has a tooth extracted by Fulton prison dentist Paul Robertson rt, and his assistant Debbie Shiverdecker in the prison's medical clinic.

By suing CMS, McDonnell said, he knows those details.

"They waited hours from the time she was first ill and dizzy and had a blood pressure of 60/40 until she was eventually transferred to a hospital," he said. The hospital physician "attributed her death to the mixing of those medications by her (prison) doctor, and the delay in getting her to the hospital."

O'Brien, the lawyer for CMS, said he's not sure Masters took the Verapamil she was prescribed. Nevertheless, he said, the prescribed amount was "well within therapeutic limits."

"It's not like death is a known interaction to these two drugs," O'Brien said.

The doctor who performed an autopsy believed that heart disease and probable hypertension caused Masters' death.

"We think she died from unrelated cardiac arrest, she had some kind of heart weakness or heart attack or something," O'Brien added. "I mean, people's hearts do fail."

Why did the company settle? "You settle to avoid cost and risk," he said.

## Looking at deaths

At a prison in Vandalia, Mo., inmate Bonita Holley was so shaken by the death of an inmate in May that she wrote to advocacy groups and the governor.

"Her medicine was switched and she said, 'I don't want to die in here,'" Holley said of her friend, Ellen "Honey" Ross. "We talked the night before her stroke."

Ross, 46, was found slumped in her room, her mouth twisted. An officer called on his radio for a stretcher. Holley said none came.

Holley ran to an area off-limits to prisoners, grabbed a stretcher and carried it to her friend with the help of a custody officer. She said another officer yelled for someone to drive the emergency vehicle (similar to a golf cart), but no one at the new prison knew how to operate it yet.

Bonita Holley is free now, paroled last month and living in Kansas City. She is pushing for an independent review of prisoner deaths.

"We want an outside auditor to come in and assess their actions," Holley said. "The auditor has to be independent of the Department of Corrections and CMS, because these people can make all of their documents look good."

George Lombardi, director of the state's Division of Adult Institutions, said each death is already scrutinized by the CMS statewide medical director, a state nurse who monitors the CMS contract and a forensic medical examiner.

"This all exceeds any death in the community by a long shot," he said.

Judy Hudson, the department's chief of nursing services, said no prisoner in Missouri has ever died due to delayed treatment or poor health care from CMS.

*Continued from pervious page*

"ashamed" of the "medical gulag" that the company ran in prisons through 1994, when it was replaced.

The company disputes the findings as off the mark.

These parts of the CMS track record apparently didn't count for much – if they were considered at all – when Missouri officials selected CMS in 1992 over two competitors and signed a five-year renewal in 1996.

Missouri sought bids without asking for information on lawsuits.

"I don't know if we would even consider that as a measure of care," said Judy Hudson, chief of nursing services with the Missouri corrections department. She was among a half-dozen state employees evaluating the bids.

In 1996, contract evaluators gave CMS high marks in experience, expertise of personnel and method of performance. Most rated CMS a 99.36 out of 100 points. The scores of its competitor, Prison Health Services, ranged from 59 to 95.

"From what I saw, it seemed like a sound company," evaluator Mark Barnes said of CMS. "I was of the impression they had performed adequately, and I didn't denote any problems that weren't resolved."

Barnes is principal assistant to the director of the Missouri Health Department.

To do background checks, evaluators used packets provided by the bidders to call references. Hudson said they also checked with their own sources.

## The future

CMS has taken several steps to stay ahead of mounting costs, Pfeiffer said. One was to set up its own "fax-and-fill" pharmacy, in Oklahoma City. Orders are sent out from there to CMS sites around the country.

Its growth will rely largely on computerized systems for communicating throughout the company and tracking inmates with chronic diseases like diabetes and heart disease to "make sure they don't fall through the cracks," Pfeiffer said. Doctors using digital medical records will increasingly treat inmates via telemedicine, a concept in which the physician diagnoses and prescribes from a remote location.

"Our philosophy is to do as much as we can as close to the patient as we can," he said. "So if we can enhance services at the facility and do it there, we want to do it there."

*Robert Steyer of the Post - Dispatch contributed information for this story.*



**Walter Williams Jr.**
Age: 63
Location: St. Clair (Ala.) Correctional Facility for a manslaughter conviction.
Date of death: Sept. 30, 1996
Circumstances: Williams received the wrong chemical during kidney dialysis in December 1995. He died nine months later.
Provider: Correctional Medical Services
CMS comment: Same as Casbys' case
Legal status: Williams' family has sued CMS, a subcontractor and its nurse. The lawsuit is pending.



**Diane Nelson**
Age: <6
Location: Pinellas County (Fla.) jail, arrested for slapping her teen-age daughter.
Date of death: March 9, 1994
Circumstances: Nelson died of a heart attack after pleading for medical attention for several hours. A nurse accused Nelson, who had a history of heart trouble, of acting.
Provider: Prison Health Services Inc.
PHS comment: The company declined to comment.
Legal status: After a federal judge ruled against the company's motions to dismiss key charges in the lawsuit filed by Nelson's ex-husband, the company reached a confidential settlement.
Item: As Nelson collapsed of a massive heart attack, a nurse told her to, "Stop the theatrics."



# Prisoner lawsuits in Missouri are way down

**BY KIM BELL**
*of the Post-Dispatch*

*JEFFERSON CITY*

Medical lawsuits are way down in Missouri prisons, and Correctional Medical Services boasts that it's a sign of quality health care.

The state had 308 pending medical lawsuits in January 1993 when CMS started taking over medical care inside Missouri's prisons. By June 1998, there were 77. That's a 400 percent drop when the growing number of prisoners is considered.

"The number of lawsuits speaks for the type of care we give," said John Treu, assistant general counsel for CMS in Missouri. "The inmates have a lot less to complain about."

CMS takes the credit but the company actually is benefiting from other factors as well.

"Part of the problem is knowing whether it's CMS that caused them to go down," said U.S. Magistrate Judge William Knox, "because we've seen lawsuits generally have gone down, and lawsuits have gone down for a whole bunch of reasons."

Prisoners can't sue until they exhaust a lengthy Department of Corrections grievance process.

"The grievances go right back to the people we're complaining about, and the medical unit's not going to find themselves guilty of anything," said prisoner G.W. Bereuter, who is serving 57 years at Moberly Correctional Center for rape and sodomy.

Among other burdles for prisoners:

• Those filing suit must pay a $150 filing fee, which used to be waived in some cases. Prisoners face new sanctions for frivolous lawsuits. Parole dates can be pushed back and "good-time served" taken away.

• Congress axed the Pell Grant program for inmates, so colleges no longer give "paralegal training" to inmates who help others file suit.

• The state has limited the amount of paper – most of it legal work – that a prisoner can keep in his cell.

To meet the constitutional standard of "deliberate indifference" set by federal courts, a prisoner must prove that officials knew of a serious medical need and deliberately disregarded it. A medical need is serious if a doctor says treatment is needed or if it's so obvious that any lay person would recognize the need for medical attention.

Treu said this hypothetical scenario would meet the definition: "Inmate walks into a physician's office and he has a bone sticking out of his leg. The doctor says, 'Yes, I realize you have a broken bone,' and 'Yes, I realize if I don't care for you you're probably going to get gangrene. Go away.'"

The standard a prisoner must meet is "so high, it's ridiculous," said Daniel V. Conlisk, a St. Louis lawyer. "You have to show all will or intention, not that they were just negligent or even grossly negligent."

Judge Knox said a case Conlisk lost in August came close to the standard. "When you looked at the medical records," Knox said, "it looked like the individual was not getting the care he needed for his multidrug resistant strain of TB."

Prisoner Mark Harris said he was going blind in 1993 because the drug Ethambutol reached toxic levels. Dr. David White knew the drug could cause loss of color vision. He ordered monthly eye tests, which weren't done.

White worked for the state then, not CMS. He left the monthly vision tests to the nursing staff and didn't check the charts himself. He said he had no authority to tell the nurses what to do because they worked for CMS.

Two CMS supervisors named in the suit settled the case before the trial, in which the jury sided with the doctor.

"The feelings of most of the jurors were, 'Why wasn't CMS on trial rather than the doctor himself?'" said one juror, a Jefferson City resident.

A study published in 1995 by the U.S. Bureau of Justice Statistics found that prisoner victories are rare. Of 26,800 suits filed in federal court one year alleging a variety of abuses, less than 1 percent resulted in jury verdicts for the prisoner.

Most prisoners lose when a judge decides they have no chance of submitting a valid claim to a jury. Treu said "well over 95 percent of our cases go away on paper."

Prisoners can use state courts for medical malpractice suits, but most can't afford to hire an expert witness to say the accepted standard of care wasn't followed.



WWJD
What Would Jesus Do?

## HEALTH CARE BEHIND BARS

# Former CMS doctor says bottom line ruled

*Dr. Kevin Martin says the company's focus on containing costs over treating illness drove him away. Doctors in New Mexico have cited similar reasons for leaving CMS.*

By Kim Bell
and William Allen
*of the Post-Dispatch*

For Dr. Kevin Martin, the case of the prisoner with foot pain illustrates what's wrong with Correctional Medical Services.

Martin spent 18 months as CMS medical director of the Moberly Correctional Center, in Missouri. An older prisoner saw Martin after complaining of foot pain on his "medical service request" or MSR.

During the visit, Martin noticed the man was diabetic, short of breath and sweating. "I started to ask him about risk factors for heart disease," Martin recalls. "And the guy basically gave me the impression he was going to have a heart attack in the next month or so."

Martin arranged for the man to see a university cardiologist who ran tests and found three vessels ready to shut down. Martin believes the man's life was saved.

Instead of congratulations, Martin said he was lambasted by an administrator at CMS, which bore the five-figure cost for the bypass procedure.

"If they put foot pain on your MSR, that's all I want you to address," Martin said the administrator told him. "This guy came in with a sore foot and left with a $30,000 operation. If they would have found him that night dead and you hadn't documented anything, nobody would've known."

Martin said he was floored by the message he heard.

"The bottom line was, if the guy was found dead, who cares, he's an inmate, and it's not documented anywhere," Martin said.

Martin recalled the administrator saying, "where you get yourself into trouble is, if you start documenting shortness of breath, and this, that and

the other stuff, now you're obligated to follow up with it ... Just stick to the chief complaint of the MSR.'"

The administrator, whom Martin identified as Ralf Salke, called Martin's allegations "a blatant lie."

"I did not say that," Salke said. "I am not involved in the health care in any way, shape or form in this contract. I am not a physician. I do not make medical decisions."

Martin, 32, said he resigned from CMS in the fall of 1996. The company declined to discuss Martin's performance or the circumstances under which he left.

A native of mid-Missouri, Martin had taken the job two years after graduating from medical school. Practicing in prison gave him a chance to work with a wide variety of health problems. But he felt overwhelming pressure to cut corners.

"The big flaw with the system is the company that runs the health care, they're paid a large sum up front and anything that they pay for is lost profit," Martin said. "Anything that's more expensive than an aspirin or a Tylenol, they have put into place many obstacles that the physician has to cross to get it taken care of."

For instance, any medication that is not on CMS's formulary list requires extra paperwork for the doctor. The doctor has to punch the information into a computer, and the company's state medical director — another doctor — must approve it.

"And they always send everything back to the physician on site, 'we need more information, we need more, information,'" Martin said. "And it turned into just a mountain of paperwork to get anything done ... And the only reason for it was to save money. The impression that I had was, if we aggravate the physicians enough, they're not going to order anything that's expensive."

He said CMS would unveil financial reports to show the medical directors how far over or under budget each prison was. "They use that sort of as an embarrassment technique," he said. The company hinted to Martin that, if his site met budget, the sign-on bonus in his new contract would be $30,000. He was already paid roughly $150,000 a year by CMS.

"They mentioned it several times," Martin said. "They'll drop that hint every now and then, 'You've got this $30,000 hanging over your head if you'd maybe just order a few less surgeries.' They don't come out and say it but that's what they mean."

Michael Pfeiffer, the company's chief operating officer, said "We're not involved in an official bonus program. ... The issue is not saving money. The issue is providing the right care at the right place."

Martin said he left the job shortly after getting a sheet of paper from CMS announcing it won a contract renewal in Missouri but would have to make about $2 million in cuts.

Martin is now a general practitioner at a clinic in Vandalia, where earlier this month he won the exceptional service award of the Audrain Medical Center.

"I feel like I'm in paradise now," he said. "I order a medication and the patient actually gets it. It took a couple of months to get used to that."

Martin is not the only doctor who feels that way. Several CMS prison doctors in New Mexico left their jobs in the early 1990s for similar reasons.

A confidential 1993 memo from Dr. Steven Spencer, the corrections department's state-employed medical director, explains why: CMS

*continued on next page*



**Henry Simmons Jr.**
**Age:** 37
**Location:** Greenville (Va.) Correctional Center, for burglary and rape convictions.
**Date of death:** Aug. 29, 1993.
**Circumstances:** Simmons died of a heart attack. Physicians prior requests for stress tests and an electrocardiogram on Simmons were ignored. He had a history of heart disease.
**Provider:** Correctional Medical Services.
**CMS comment:** Simmons' death was "unfortunate" and led to new procedures to treat inmates with heart condidions.
**Legal status:** Simmons' wife sued CMS, the state, other state officials and three physicians. CMS and the state each paid half of a $275,000 settlement in June 1996.



**King Casby**
**Age:** 37
**Location:** St. Clair (Ala.) Correctional Facility for marijuana possession and distributing controlled substances convictions.
**Date of death:** Oct. 31, 1996.
**Circumstances:** Casby received the wrong chemical during kidney dialysis in December 1995. He died 10 months later.
**Provider:** Correctional Medical services
**CMS comment:** "We believe that Southeast Dialysis (a subcontractor's employees may have used an incorrect dialysis solution." CMS said the death was "unrelated."
**Legal status:** Casby's family has sued CMS, the subcontractor and its nurse. The lawsuit is pending.

*Dr. Kevin Martin, of Vandalia, Mo., left CMS for private practice. The variety of prison work drew him in, but he said the pressure to cut corners forced him out.*



**HEALTH CARE BEHIND BARS**

# Inmate got cancer treatment after a judge and a nurse stepped in

By Kim Bell
*of the Post-Dispatch*

AKRON, OHIO

Judge Patricia A. Cosgrove twice had to order Correctional Medical Services to take care of a cancer-stricken inmate at the Summit County Jail.

"This is cancer, it's not a hangnail," Cosgrove said, scolding a CMS staffer in February.

The company told her it had been holding off on chemotherapy for altruistic reasons. It was waiting for burglary suspect Robert Eugene Campbell to be moved to a state prison so his cancer treatment would be uninterrupted.

Yet Campbell was not going to prison anytime soon. The trial was several weeks away. Campbell already had gone 2 1/2 months in jail without treatment.

"This is the thing that incensed me," Cosgrove said. "I told (CMS). 'If his cancer progresses because of the delay in treatment, as far as I'm concerned you leave yourself open to a suit.'"

After Cosgrove handed down her second court order, on Feb. 23, Campbell got six weeks of chemotherapy at CMS' expense. If it had waited until prison, an agency other than CMS would have paid.

"After that point," the judge said, "there were no more problems with him getting treatment."

The St. Louis company is paid $1.2 million a year by Summit County to provide health care for the 14,000 inmates who pass through the jail. Corrections chief Steve Finical said the sheriff's office is happy with CMS.

CMS on Friday said Campbell "received frequent and appropriate treatment," seeing a doctor 25 times in six months.



Robert Campbell's prognosis is poor. He said he felt his cancer was being neglected at the Summit County Jail — in Akron, Ohio. "I was asking for treatment. I was asking to be taken care of."

Before the judge ordered chemo, "Mr. Campbell was already scheduled to receive this care."

Cosgrove wasn't alone in complaining. A whistleblower nurse alerted Cosgrove to the inmate's plight through letters and phone calls.

CMS is very creative at avoiding treatment costs while appearing to provide a facade of care," nurse Richard Kleinhans wrote. "The cost avoidance techniques of CMS go too far when they are utilized to hasten the death of an inmate."



Richard Kleinhans

Kleinhans, of Akron, worked as a CMS licensed practical nurse for 10 years. He said his bosses were expert at delaying medical care to pad profits. For years, he said, he helped them do it.

He screened new inmates to weed out those with costly medical conditions. Pregnant inmates close to delivery would be released from jail, then rearrested once the child was born, so CMS did not have to pay for the delivery, Kleinhans said.

"They'd study the charges and then decide how much medical treatment they were going to give, if at all," Kleinhans said. "If somebody needed oxygen, and they're in for a misdemeanor, the jail would call the judge up and say, 'Can we get his bond lowered?'"

Starting in late 1996, he complained in staff meetings that inmates weren't getting life-sustaining medicine at prescribed times. He told the sheriff's office,

*continued on next page*

## Bottom Line
*continued from page 25*

officials were intervening too much in the practice of medicine.

The CMS medical director for New Mexico then, Dr. Anna Davis, was "denying requests for consultation, denying requests for drugs recommended by consultants, changing physicians' orders and adding orders without seeing the patient or consulting the physicians directly responsible for the patient's care," the memo said.

The corporate attitude was behind the high

turnover rate among CMS doctors in New Mexico, the memo said.

Spencer is now an independent consultant working on behalf of several states, the U.S. Department of Justice and other clients. In an interview, he said the CMS state medical directors he worked with until he retired in 1993 seemed "reasonable" at first.

But CMS brought these administrative people back to St. Louis for orientation. "They came back with a 'corporate commitment' — that's a nice way of putting it — that they didn't have when they took the job," he said.

Nancy Blumenthal
Age: 17
Location:
Westchester County
(N.Y.) jail, arrested for charge of robbery and threatening her mother with a knife.
Date of death:
May 17, 1996
Circumstances:
Blumenthal committed suicide at the jail after a psychiatrist employed by the provider took her off antidepressant medication despite warnings she was suicidal.
Provider: EMSA
Correctional Care.
EMSA comment:
The company declined to comment.
Legal status:
Blumenthal's parents settled a lawsuit against EMSA and the county for $1.45 million.



Bobby Dancy
Age: 47
Location: St. Clair (Ala.) Correctional Facility, on a murder conviction.
Date of death:
Oct. 30, 1996
Circumstances:
Dancy, who was a schizophrenic, was one of four inmates who received the wrong chemical during kidney dialysis in December 1995.
Provider:
Correctional Medical Services.
CMS comment:
"We believe that Southeast Dialysis (a subcontractor) employees may have used an incorrect dialysis solution." The company's contract was terminated. CMS said the death was "unrelated to the treatment received in December 1995."
Legal status:
Dancy's family has sued CMS, a subcontractor and its nurse. The lawsuit is pending.

A Very Important Health issue.                    Sept 2nd 2006

And Retaliation, of CMS staff members

RE: Sandra Stratton / Ashcraft & Joann Durnett, LPN, et.al.
     Docton staffing  8 doctors Including ADC Board of
     corrections member et.al  Dr. John Lytle MD of PineBluff.


Dear Investigator,

     Greetings sir, my name is Tommy Henderson #93098, an inmate at ADC
of ORCU. I was recently tansfered from the Varner Unit to this Unit.
My (L) great toe was amputated by pure neligence, deliberate indeferency
even medical malparctice, Delays, no Rehabilitation, not even a planor
even physical Therapy, not even follow ups on my tests of Dr's orderes
even ministering function's Violations of nursing staff, failing to make
sure that my medicatows are ordered so I dont run out, discreatory
funchons violations of over charging inmates #3ee where nurses
make statements that are false, writing what they want to say, even
trying to protect their RN, LPN Licenses by being cleverly just a
job to where a few do their jobs but others just want to get on
the internet to play games, e-mail, pawn off to the next shift
duties that make decisions that the infirmary manager Ms. Sandra
Stratton / Ashcraft Retaliating me for protecting my side and
offer to inmates a "voice" by grievances of those who can not
help them selves to get the help they need and have a right
to have Constitutional + Civil (1)

Now, I had a Doctor on the street in Little Rock who was treating me for my medical issues that not only he took measurements and pictures but test, even a clear Nuclear Scat scan which was negative for damages in April or May of 2005. Even witness's both county and CMS staff at DOU (Intake) and Varner Unit will testify in all counts how the issues of what my ① great toe went through by walking over 25,000 ft or so a week, for months, being assigned to Votech to walk even more, Did CMS protect me through this part of this time frame Oct 10th 2005 to April 2006? No, I have proof, and expert testimonies witness's and over 200 or so inmates who can also testify to this issue.

Even evidence of two (2) chips of bone that came out of my ① foot back in March of 2006, my 70 over grievances + informal's pending, giving "Notice w/ Intent to sue" on many grievances + informal Resolutions even U.S. federal cases backing up my claim. Even other inmates who I have talked and worked with them without asking a "dime" to get the help for them that damages of there physical + mental issues have been failed and even dropped like in the closet to bring cob webs to there and my issues for serious medical and mental issues. Even violations of the Individuals with Disabilities Education Act of 1973 and the Rehabilitation Act of 1973, on services that CMS does not have



As a Medical Doctor as sir, not me but you, you are hired I
see that when you took the Hippocratic Oath I hope you still
honor that, but to see what these doctors dont and the issues
of yet CMS just get their hand slapped and continue to do
what they do? Even with the recent Mental Health contract with
ADC, CMS where in the hell are they?, How much more headache
does us inmates have to go through to get some help here.

The old good buddy system, ADC, constantly violating Colon of
Law in every aspect, All are held liable and the constitutional
harm suffered were the result of official capacity, Then inmates
like James Treadway Adc # 132680, in this incident at Varner.
In which no Cat scan, just x-rays on a skull fracture and those
who did it to him, never got introuble, and I got hurted for
getting hurt and keeping a rape from even happening from a
Racist population and a Ast Warden Mr. Kim Luckett hating
white persons, on inmates, but love to Sexually haneash
females? getting DWI's violating colon of Law because he
is Mr. Ray Hobbs relative and protect, protect, protect,
well, I pray that Arkansas Democrat/gazette wakes
up and be our voice someday, someday in the

(4)

Foreseeble future, Oh and by the way this letter is going to
The Democrat and my Attorney's A major Law firm, why? I
already took down a police Dept in Arkansas years ago,
and won because of a Internal, State, FBI. Investigation.
over Color of Law and other issues, With having a paper
trail and "3" three pages of evidence. So my medical
experts which I am putting together all over the United States
on the way me not even getting enough Antis Biodics in rehab
2006, 5 days, The ANP Recommended "long team care of this"
and after my paper trail of Doctor #1, Doctor #2, Doctor#3
Doctor #4, Doctor #5, Doctor #6, Doctor #7, Doctor #8
The specialist Dr. John Lyttle, I dont want to ever see
Him again. If I do, its just a nother paper trail for
my Attorneys and medical expert witness's to where I will
win both State & Federal claims. If they want to settle
now with a large amount with out going to court, Not just
no pocket change, because my balance is off and still a
central Line in my chest I have had for 4 months now
and no rehabilitation on therapy or even my request



of seeing another specialist not a general MD that CMS refused to give me before my amputation, That Doctor I had already seen back in Dec, He said I had no Infection, and If I didn't why did my ® foot & ① great toe was extremely infected and the SNP who I may sue or may not sue yet But to where, another so called visit, which never happened in Jan, of 06, to where Feb 23rd I was sent to D&U Hospital Stayed there 2½ days and because of needed bed space which I also questioned was sent to Cummins Infirmary where those staff members even had a hard time putting in the Anti Bodies in my worst several times, and was placed in a 24/7 locked down Room w/o a t.V, or even a telephone to call any one, How many inmates went through that cruel and unusal punishment, couldn't even get commissary or Envelopes or Paper, Isolation & Super max has that kind of treatment. Where the ward at Varner was being used for Administration offices and not a ward which by the State Board has it listed as, But yet no updates of the State Board licenses to have the infirmary up to date?



To Sir By closing of this letter and with your notice
of to see what you will do here, time will tell, actions
speaks louder than just sitting back and yes be busy of
things of general alternatives of your duties, It would be
nice if a Un basis Dept of the state was put in place or
even a private seqtire or Federal placements all over the
prisons as can advocate with the courts of a forseeable
remedy of a systematic program of the inadequacies
in processing inmates complaints that are a legimate Reason
to try to problem solving by a constitute deliberate
indifferenare in alternatives, that, if inadequ reses could
be deemed policies, such policies were and are in Adequate
on that Doc's choice of policy was made deliberately or
Recklessly, ignoring its deficiencies,

   Now I have two (2) Disciplinaries that I was found guilty of
co Nurse Joann Burnett, who is working with Her boss ms Spattery
ashcraft to write me up on the issues of my greivances
and Warden Harris was to overturn then and he has not as of
yet? I sent my appeal to Mr. Gibson. Now I wait until

①

next State Exhaustion to see if it will be overturned and all my punishment be reverse, modify to where there is no disciplinaries in my files or E-mails. Could you help or will you be another individual to add to the suit.

I have nothing to lose my foot may never be normal again, even what it looks like now, Butchered and have a knot on the bottom of my foot that was not there, my pidgen toes with out some thing to keep them together yet and me putting tape around them to where I can handle to put my socks, and cast boots or may be some time a shoe that I have to 2 sizes to big, But its where I have no choice in what to where, I can't even use shower shoes to take a shower in, Cant ever get $10^{00}$ sandles from wal-mart to use instead of the cast boot which is on the verge of wearing out at what cost to that? More than those $10^{00}$ walmart shower shoes/ sandles. Chris by then? ADC to by then? Not. So I close with this Matt Dew 25:40 Thru 46. James 1:4, Depression and O.C.D. setting in and Anxiety Attacks and exhaustion. I work if I could I'm not lazy, look at my work history at ADC, my no Disciplinarys until now—

(8)

What about "Good faith" here, Intent or knowledge, preventative measures, Depriving my Liberty & freedom, Risk or harm of losing more of my foot, maybe the whole foot. So many cases particular intent or knowledge present, or Particular cases intent or knowledge not present But those still not being adequate treated, I have a Population of those, Even Diabetics, even the great so called Diet menus that gives are H1C's a high level, where is the $ that the state has to provide better food for us in matter for better quality, better rehabilitation and issues of other states providing better care, Whats up with Arkansas, Given our legislatures getting there Pockets full and still do wrong and havent gotten caught Yet of their duties that is against "Color of Law" even a unconstitional issue of Act 350 of 2005, What about our children, where legislatures have con act of better quality of food and issues of protecting our future, we need to take care of ourself now, Will you be the one to answer to that call?   Respectfully submitted

Tony Henderson

*2nd Request sick call*
*was never called in 1St one*
*say in 1St meal, closed me*

ARKANSAS
DEPARTMENT OF CORRECTION

MSF-202C

Health Service Request Form

| Name (Last, First, MI) | | DCP#: | Date of Birth: | Barracks: | Date of Request |
|---|---|---|---|---|---|
| Henderson | Tommy | 93098 | 8/5/62 | 8 | 9-8-06 |

Job Assignment:
KSU 1st

Description of the problem: Need new shoes Problems of both feet new
2nd Request to 1st sick call had I never get to go to in called.
Diabetic nerve pain of my feet, my ☺ foot cramps+ ach. hurt left+
limb+ bounce told me that I need to see a foot doctor specialist.
my eye appointment of Being a diabetic, or my followups or appendix

I consent to be treated by the Health Services Staff for the condition described: *Tommy Henderson*

PLACE THIS SLIP IN THE MEDICAL BOX OR DESIGNATED AREA AND DO NOT WRITE BELOW THIS LINE

List Protocol(s) Below     NURSING DOCUMENTATION

| 1) | 2) | 3) |
|---|---|---|

Subjective Data

Objective Data:   BP:          Pulse:          Respirations:          Temperature:          Weight:

Assessment:

Plan by Nursing Care:

Body System Code: (from problem list)          Patient Education: [ ] Handout   [ ] Verbal Instruction  Topic:

Refer to:  [ ] Physician     [ ] Mid-level     [ ] Mental Health  [ ] Dental   [ ] Other: (List:

| | Title: | Unit: | Date: | Time: |
|---|---|---|---|---|

Signature:

I understand that in accordance with Department of Corrections policy, I will be charged for healthcare services through deductions of applicable co-payment charges from my resident account, and that if I have insufficient funds to cover the charge, the amount of co-payment will be set up as an outstanding debt.

Name:
ADC#:
Date of Birth:
SS#:

Inmate's Signature: _____ Date: _____

Arkansas Dept of Corrections
Request for Interview
North Central Unit

To: Warden / Records Designee
From: Tommy Henderson #93098         10 Bks
RE: Review Institutional Jacket
Date: 9-18-06

Dear Sir,
My Request under AR 804 and A3 02 for
Reviewing my institutional jacket is for a vital part
of information for my criminal case of a state Hapeas Corpus
on grounds of I was incarcerated in 2003 And those records
if possible my whole movement status As evidence showing movements,
transfers, etc. Also information I need on the Interstate Detainers
Act that my 6 months is up and I may need a copy of my motion
for Kansas to get me so I can file a 28 USC § 2255.
Also another reason is for my civil cases on a issue of
the recent transfers, so a copy of this movement status is
vital, as an indigent inmate, please provide those copies at
cost to the state, Moore vs State, where I have shown Reasons
for copies that need to be made         respectfully Submitted
                                        Tommy Henderson 93098

**INFORMAL RESOLUTION FORM** (Attachment 1)

UNIT/CENTER _____

PLEASE PRINT
Name _____ ADC# _93798_ Brks _10_ Job Assignment _____

IS THIS AN EMERGENCY SITUATION? YES _×_ NO ____ If yes, why? _____

(An emergency situation is one in which you may be subject to a substantial risk or physical harm. It should not be declared for ordinary problems that are not of a serious nature.) If you marked yes, you may give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. You will be given a copy of this receipt by the designated problem-solving staff. REPRISALS. If you are harmed or threatened because of your use of the grievance form, report it immediately to the Warden _____

Give a **BRIEF** statement of your complaint/concern. This statement must be specific as to the complaint, **dates**, places, personnel involved and how **you** were affected. **One issue** or incident per complaint form. Additional pages or forms will **not** be allowed.

_____
_____
_____
_____
_____
_____
_____
_____
_____

Inmate Signature                              Date

## THIS SECTION TO BE FILLED OUT BY STAFF ONLY.

**STAFF RECEIPT AND ACTION TAKEN**

PRINT STAFF NAME (PROBLEM SOLVER)          Staff Code          Staff Signature / Date Received

Was this deemed an emergency?  Yes _____ No _____

Was there a need to contact medical? Yes _____ No _____ If yes, give name of person contacted? _____

Describe action taken to resolve complaint, including dates. _____

Was issue resolved? Yes _____ No _____   Does inmate agree that issue was resolved? Yes _____ No _____

Staff Signature/Date                    Inmate Signature/Date

**DISTRIBUTION: YELLOW** – Inmate Receipt

**(AFTER COMPLETION)  PINK** – Problem Solver Copy      **BLUE** – Grievance Officer
                    **ORIGINAL** – Given back to the Inmate After Completion

810-00

Note informal Copy to Larry Norris

## INFORMAL RESOLUTION FORM (Attachment 1)

Copy to Ray Hobbs

**UNIT/CENTER** _NCU_

**PLEASE PRINT**
Name _Tommy Henderson_   ADC# _93096_  Brks _10_  Job Assignment _Unassigned_

IS THIS AN EMERGENCY SITUATION? YES _✗_ NO ___ If yes, why?
_Retaliation and murder because Varner contacted ORCU_

(An emergency situation is one in which you may be subject to a substantial risk or physical harm. It should not be declared for ordinary problems that are not of a serious nature.) If you marked yes, you may give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. You will be given a copy of this receipt by the designated problem-solving staff. REPRISALS: If you are harmed or threatened because of your use of the grievance form, report it immediately to the Warden _On 9-8-06 St warden Hipple_

Give a **BRIEF** statement of your complaint/concern. This statement must be specific as to the complaint, **dates**, places, personnel involved and how **you** were affected. **One issue** or incident per complaint form. Additional pages or forms will **not** be allowed.

_On 9-8-06 Asi Warden Hipple called for me in his office about some thing of in formals and grievances that I just wrote on Varner because they manston me due to my released of grievances and the ones I laded on Varner CMS. I have witness both CMS, staff and inmates in Wrist, I have names and Ape's, of a those that will testify in court, a nurse and Vicky Balarti and william tirky, the nurse will be arrivated until court, because of her get and the infermation to her I will also give it to internal affairs and my federal money, this has a sexial harrashmint charges until mrs. Kim beckett. So with then calling mr. Hipple he moves me 9-14-06_

_Tommy Henderson_
Inmate Signature

_9-13-06_
Date

## THIS SECTION TO BE FILLED OUT BY STAFF ONLY.

### STAFF RECEIPT AND ACTION TAKEN

PRINT STAFF NAME (PROBLEM SOLVER) _____   Staff Code _____   Staff Signature / Date Received _____

Was this deemed an emergency?  Yes _____ No _____

Was there a need to contact medical?  Yes _____ No _____   If yes, give name of person contacted? _____

Describe action taken to resolve complaint, including dates _____

_____

_____

_____

Was issue resolved? Yes _____ No _____   Does inmate agree that issue was resolved? Yes _____ No _____

_____
Staff Signature/Date

_____
Inmate Signature/Date

**DISTRIBUTION: YELLOW** – Inmate Receipt

**(AFTER COMPLETION)  PINK** – Problem Solver Copy   **BLUE** – Grievance Officer

**ORIGINAL** – Given back to the Inmate After Completion

810-00

*Copy to Parity May*
*Not a informal Resolution*

## INFORMAL RESOLUTION FORM (Attachment 1)

UNIT/CENTER __NCU__

PLEASE PRINT—
Name _Tammy Henderson_ ADC# _93698_ Brks _10_ Job Assignment _unassigned_

IS THIS AN EMERGENCY SITUATION? YES _X_ NO ___ If yes, why? _Retaliation of grievances of Varner and ____ ___

(An emergency situation is one in which you may be subject to a substantial risk or physical harm. It should not be declared for ordinary problems that are not of a serious nature.) If you marked yes, you may give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. You will be given a copy of this receipt by the designated problem-solving staff. REPRISALS: If you are harmed or threatened because of your use of the grievance form, report it immediately to the Warden. _grievances completed also — bring intent to Sue —_

Give a **BRIEF** statement of your complaint/concern. This statement must be specific as to the complaint, **dates**, places, personnel involved and how **you** were affected. **One issue** or incident per complaint form. Additional pages or forms will **not** be allowed.

_Re: Larry May...... This notice is a ____ Intent to Sue_
_that stems on 8-30-06 from Varner to CRCU_
_that from the Warden Ken Terrells conversation with_
_the CID Sandra ____ ____ N.S.A. ___ of_
_Varney to have me moved transferred because of my_
_____ ("also read") and grievances. They also given two (5)_
_began this Continues Dec 8-10-06, 9-19-06. By days IV_
_are 60 days of, ____ ____ ____ ____ ____ ____ mail._

_____                              _9-5-06_
Inmate Signature                                            Date

---

## THIS SECTION TO BE FILLED OUT BY STAFF ONLY.

__STAFF RECEIPT AND ACTION TAKEN__

PRINT STAFF NAME (PROBLEM SOLVER) _____  Staff Code ____  Staff Signature / Date Received _____

Was this deemed an emergency? Yes ____ No ____

Was there a need to contact medical? Yes ____ No ____ If yes, give name of person contacted? _____

Describe action taken to resolve complaint, including dates _____

_____

_____

Was issue resolved? Yes ____ No ____   Does inmate agree that issue was resolved? Yes ____ No ____

_____               _____
Staff Signature/Date                    Inmate Signature/Date

DISTRIBUTION: **YELLOW** – Inmate Receipt

**(AFTER COMPLETION) PINK** – Problem Solver Copy   **BLUE** – Grievance Officer

**ORIGINAL** – Given back to the Inmate After Completion

810-00

*No a in other things   copy to Mr. Larry Mary*
*copy to External Affairs*
**INFORMAL RESOLUTION FORM (Attachment 1)**   *copy to my Attorney*

UNIT/CENTER _____ NCU _____

PLEASE PRINT
Name _____ Tommy Hedgspn _____   ADC# 93698  Brks 10  Job Assignment _____

IS THIS AN EMERGENCY SITUATION? YES ✗ NO ___  If yes, why? _____

(An emergency situation is one in which you may be subject to a substantial risk or physical harm. It should not be declared for ordinary problems that are not of a serious nature.) If you marked yes, you may give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. You will be given a copy of this receipt by the designated problem-solving staff. REPRISALS: If you are harmed or threatened because of your use of the grievance form, report it immediately to the Warden. *possible retaliation Gr NCU*

Give a **BRIEF** statement of your complaint/concern. This statement must be specific as to the complaint, **dates**, places, personnel involved and how **you** were affected. **One issue** or incident per complaint form. Additional pages or forms will **not** be allowed.

*Since this unit still don't have the T.V.S in the Bks
and the forms matters, since I'm a maintenance man and I
installed halvenss when I opened in 2003 and all the fixture
lives and computer line along with D smith of Commons If
NCU does not have computer do it I would be glad to
do the job, Complete it and put in Jacks in the porches.
even remove the MCT phones to cause the tension.
— look for retaliation here I would exempt it.
The T.V.S that was bought is in the Lt roller house.
Pay what another maintenance worker who put them in the house on
(3) things rec to give that I will file paper work by Oct 5th 2006*

*Tommy Hedgspn*                                    9.15-06
Inmate Signature                                    Date

## THIS SECTION TO BE FILLED OUT BY STAFF ONLY.

### STAFF RECEIPT AND ACTION TAKEN

PRINT STAFF NAME (PROBLEM SOLVER) ___  Staff Code ___  Staff Signature / Date Received ___

Was this deemed an emergency?  Yes ___  No ___

Was there a need to contact medical? Yes ___ No ___  If yes, give name of person contacted? ___

Describe action taken to resolve complaint, including dates. _____

Was issue resolved? Yes ___ No ___    Does inmate agree that issue was resolved? Yes ___ No ___

Staff Signature/Date                         Inmate Signature/Date

**DISTRIBUTION: YELLOW** – Inmate Receipt

**(AFTER COMPLETION)  PINK** – Problem Solver Copy   **BLUE** – Grievance Officer

**ORIGINAL** – Given back to the Inmate After Completion                810-00

**INFORMAL RESOLUTION FORM (Attachment 1)**

Copy'd Tany Norris/ Hog/Ellis

Copy to ~~Tany Ellis~~ Varner Unit.

UNIT/CENTER _____ NCU Varner _____

Copy to Inmal affairs

**PLEASE PRINT**
Name _____ Tommy Hudson _____ ADC# 93698 Brks 10 Job Assignment Unassigned

IS THIS AN EMERGENCY SITUATION? YES ___ NO ___ If yes, why?
Retaliation, false documentation, Violations of AD 225, AD-94-03

(An emergency situation is one in which you may be subject to a substantial risk or physical harm. It should not be declared for ordinary problems that are not of a serious nature.) If you marked yes, you may give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. You will be given a copy of this receipt by the designated problem-solving staff. REPRISALS: If you are harmed or threatened because of your use of the grievance form, report it immediately to the Warden — Noted Intent to Sue —

Give a **BRIEF** statement of your complaint/concern. This statement must be specific as to the complaint, **dates**, places, personnel involved and how **you** were affected. **One issue** or incident per complaint form. Additional pages or forms will **not** be allowed.

Dear Mrs. Ludett, Ms. Walker, How to whom it may concern

Notice a "Intent to sue" for Retaliation, false

Documentation of Transfer to Maxium Stating that the reason

for transfer was drug writing letter (sic) to nurse, nurse

Purnett got a "Christian Card" Card not letters

Unless its sent ever, No MSS/Walton conversation with Ludett

_____ Tommy Hudson _____          9-15-06

Inmate Signature                    Date

---

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY.**

**STAFF RECEIPT AND ACTION TAKEN**

PRINT STAFF NAME (PROBLEM SOLVER) _____     Staff Code _____     Staff Signature / Date Received _____

Was this deemed an emergency?  Yes _____ No _____

Was there a need to contact medical?  Yes _____ No _____   If yes, give name of person contacted? _____

Describe action taken to resolve complaint, including dates: _____

Was issue resolved?  Yes _____ No _____   Does inmate agree that issue was resolved?  Yes _____ No _____

Staff Signature/Date                    Inmate Signature/Date

DISTRIBUTION:  YELLOW – Inmate Receipt

(AFTER COMPLETION)  PINK – Problem Solver Copy     BLUE – Grievance Officer

ORIGINAL – Given back to the Inmate After Completion

810-00

**GRIEVANCE FORM - (Attachment 1A)**

UNIT/CENTER ___Mavern Unit___

<table>
<tr><td>FOR OFFICE USE ONLY</td></tr>
<tr><td>Grv. # _not a grievance_</td></tr>
<tr><td>Date Received _____</td></tr>
<tr><td>Grievance Code: _____</td></tr>
</table>

PLEASE PRINT
Name ___Tommy Henderson___ ADC# _93098_ Brks _8_ Job Assignment _BU_

IS THIS GRIEVANCE A MEDICAL GRIEVANCE?   Yes _____  No _____   _Wendy Kelly_

**All complaints/concerns should first be handled informally before proceeding to the formal grievance procedure.**

## THE ORIGINAL INFORMAL RESOLUTION FORM MUST BE ATTACHED

**Informal Action Taken**   _Do I have Merit Now_

Have you discussed this problem with your designated problem-solver? Yes ___ No ___ If yes, give date _____

Why do you feel the informal resolution was unsuccessful? _____

_Notice to ADC Intend to Sue_

Please give a **BRIEF**, clear statement of your grievance. This statement must be specific as to the complaint, **dates**, places, personnel involved, how **you** were affected and what you want to resolve the issue. **One issue** or incident per grievance. Additional pages or forms will **not** be allowed and if attached, will result in the automatic rejection of this grievance without content review.

_Wendy Kelly! Now can you see that I have_

_Been retaliated By Ms. Stancton/Ashcroft_

_She had One of her nurses to write me_

_up. Now Im Class IV loss 60 day 97_

_And She had MR. Luckett send me away_

_violating my American Disability Act_

_and Individuals Education Act I will Sue_

IS THIS AN EMERGENCY SITUATION?  YES _X_  NO ___  If yes, why?

_Get me Back to Varner ASAP!_

(An emergency situation is one in which you may be subject to a substantial risk or physical harm. It should not be declared for ordinary problems that are not of a serious nature.) If you marked yes, you may give this completed form to any officer or department employee who shall sign the attached emergency receipt, give you the receipt and deliver it without undue delay to the ARO, the Warden/Center Supervisor or, in their absence, to the Unit/Center Assistant Warden. REPRISALS: If you are harmed or threatened because of your use of the grievance form, report it immediately to the Warden.

_____                    _9-7-06_
INMATE SIGNATURE                                     DATE

**(TO BE FILLED OUT BY THE RECEIVING OFFICER)**

### RECEIPT FOR EMERGENCY SITUATIONS

OFFICER (Please Print) _____ Signature _____

FROM WHICH INMATE? _____ ADC# _____

DATE: _____  TIME: _____

**GRIEVANCE FORM - (Attachment 1A)**    Exhibit #1 (circled)

UNIT/CENTER  _Varner / DEU Hospital_

| FOR OFFICE USE ONLY |
| --- |
| Grv. #  VU-06-00222 |
| Date Received  4-26-06 |
| Grievance Code:  600 |

PLEASE PRINT
Name  _Tommy Henderson_   ADC#  _93098_  Brks  _15_  Job Assignment  _Vo-tech_

IS THIS GRIEVANCE A MEDICAL GRIEVANCE?   Yes  _✓_  No  _____     _Exhibit # 1_

********************************************************************************

**All complaints/concerns should first be handled informally before proceeding to the formal grievance procedure.**

## THE ORIGINAL INFORMAL RESOLUTION FORM MUST BE ATTACHED

**Informal Action Taken**

Have you discussed this problem with your designated problem-solver? Yes _✓_ No __ If yes, give date _4-16-06_

Why do you feel the informal resolution was unsuccessful? _No, opsion between Dr Amhed_
_Ansuering Exhibit #1 Informal Resolution statements where not_
_by the Dr where not answered through proper channels of the_
_medical procedures, Ansuer Dr. Amhed give was not ~~reasons~~ a true statement_

********************************************************************************

Please give a **BRIEF**, clear statement of your grievance. This statement must be specific as to the complaint, **dates**, places, personnel involved, how **you** were affected and what you want to resolve the issue. **One issue** or incident per grievance. Additional pages or forms will **not** be allowed and if attached, will result in the automatic rejection of this grievance without content review.

_On 4-16-06 Exhibit #1 informal Resolution complaint was giving_
_federal, state "notice to intent to sue" Dr Ahmed for delay of_
_treatment, medical malpractice, un Reasonable medical care,_
_medical neglience, on his part from Oct 17th of 05 to 4-16-06_
_on his Decisions of How, what kind of treatment He was going to treatme._
_Dr Hobbaeid has gone the extra mile helping me with my_
_medical problems. She could only do what she is allowed to do As_
_a ANP. My Big toe on my left foot is gone Now, yes, It could have_
_be saved if I had better decisions of two persons above._
_Yes, Records will piese a puzzle together why the lack of the_
_above persons, my informal Resolutions are in my property, at Varner not DEU._

IS THIS AN EMERGENCY SITUATION? YES ___ NO ___ If yes, why? _____

(An emergency situation is one in which you may be subject to a substantial risk of physical harm. It should not be declared for ordinary problems that are not of a serious nature.) If you marked yes, you may give this completed form to any officer or department employee who shall sign the attached emergency receipt, give you the receipt and deliver it without undue delay to the ARO, the Warden/Center Supervisor or, in their absence, to the Unit/Center Assistant Warden  REPRISALS: If you are harmed or threatened because of your use of the grievance form, report it immediately to the Warden.

_Tommy Henderson_                                          _4-22-06_
INMATE SIGNATURE              RECEIVED              DATE
                             OFFICE OF THE
                             INVESTIGATOR

(TO BE FILLED OUT BY THE RECEIVING OFFICER)
                    JUL 5 2006
**RECEIPT FOR EMERGENCY SITUATIONS**

OFFICER (Please Print) _____  HEALTH & CORRECTIONAL PROGS.
                                      Signature DIRECTIONAL PROGS.
                                      AR DEPT. OF CORRECTION
FROM WHICH INMATE? _____ ADC# _____

DATE: _____  TIME: _____

**INFORMAL RESOLUTION FORM (Attachment 1)**          Exhibit # 1

UNIT/CENTER _Varner_          medical

PLEASE PRINT
Name _Tommy Henderson_          ADC# _93098_ Brks _15_ Job Assignment _Vo·tech._

IS THIS AN EMERGENCY SITUATION? YES ___ NO _✓_ If yes, why? _____

(An emergency situation is one in which you may be subject to a substantial risk or physical harm. It should not be declared for ordinary problems that
are not of a serious nature.) If you marked yes, you may give this completed form to the designated problem-solving staff, who will sign the attached
emergency receipt. You will be given a copy of this receipt by the designated problem-solving staff. REPRISALS: If you are harmed or threatened
because of your use of the grievance form, report it immediately to the Warden.

Give a **BRIEF** statement of your complaint/concern. This statement must be specific as to the complaint, **dates**, places, personnel
involved and how **you** were affected. **One issue** or incident per complaint form. Additional pages or forms will **not** be allowed.

On 4-15-06 @ I Tommy Henderson #93098 give Dr. Ahmed
medical Director of CMS @ Varner Unit notice Intent to sue --
for unreasonable care, medical-negligence, Delay of treatment
for my left Big toe where Diabetic Ulcer + Infection for
long periods, waiting on it, failing to protect the wound
and foot from Infections, failing to give adequate periods for
necessary I.V.'s. From Dates 10-17-05 to this Date
4-15-06, no pain medication, has only treated me with High
Blood pressure meds and Insulin, continuance from previous orders
of feet world Drs, I have a medical history, failing to retrieve medical
Records I gave to him to order history, Decision he didnot want them.

_Tommy Henderson_          4-15-06
Inmate Signature          Date

---

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY.**

**STAFF RECEIPT AND ACTION TAKEN**

_____          _Sgt. M. Hust_ 4/15/06

**PRINT STAFF NAME (PROBLEM SOLVER)**     Staff Code     Staff Signature / Date Received

Was this deemed an emergency? Yes _____ No _____

Was there a need to contact medical? Yes _____ No _____ If yes, give name of person contacted? _Dr. Amod_

Describe action taken to resolve complaint, including dates. _Doctor Advised that inmate_
_T. H Cnderson is getting treatment for his toe_

_____
_____

Was issue resolved? Yes _✓_ No ____   Does inmate agree that issue was resolved? Yes ____ No _✗_

_Sgt M Hust_ 4/16/06          _Tommy Henderson_ 4/16/05
Staff Signature/Date          RECEIVED     Inmate Signature/Date
                              OFFICE OF THE
                              INVESTIGATOR

**DISTRIBUTION: YELLOW** – Inmate Receipt

**(AFTER COMPLETION)   PINK** – Problem Solver Copy JUL 05 2006   **BLUE** – Grievance Officer
**ORIGINAL** – Given back to the inmate After completion          810-00

## GRIEVANCE ACKNOWLEDGEMENT

TO: Inmate  Henderson, Tommy                    ADC #:  093098D

FROM: Rochelle, Tammy K                    TITLE:  Grievance Officer

RE: Notification of Grievance Received.                    GRIEVANCE #:  VU-06-00222

DATE:  04/26/2006

Please be advised, I have received your Grievance dated  04/22/2006  on  04/26/2006

You will receive communication from this office regarding the Grievance by  05/24/2006

*I. Rochelle*

Signature of Grievance Officer/ARO

## CHOOSE ONE OF THE FOLLOWING

⊙   This Grievance is of a medical nature and has been forwarded to the infirmary staff.

○   This Grievance has been determined to be an emergency situation, as you so indicated.

○   This Grievance has been determined to not be an emergency situation because you would not be subject to a substantial risk of personal injury or other serious irreparable harm. Your Grievance will be processed as a Non-Emergency.

*G. Harris by OD*

Warden/Center Supervisor's
Signature

_____

Deputy/Assistant Director or
Director's Signature

RECEIVED
OFFICE OF THE
INVESTIGATOR

JUL 05 2006

HEALTH & CORRECTIONAL PROGS.
AR DEPT. OF CORRECTION

INMATE NAME: Henderson, Tommy    ADC #: 093098D    GRIEVANCE #: VU-06-00222

## WARDEN'S/CENTER SUPERVISOR'S DECISION

I have determined that your grievance is a medical matter. I have forwarded your grievance to the Medical Administrator who will provide a written response, and/or will interview you within twenty working days of the date I received your grievance. Should you receive no response within this time frame, or the response that you received is unsatisfactory, you may appeal to the Deputy Director for Health and Correctional Programs. If you have medical needs that you believe are urgent, put in a Sick Call Request, or send a Request for an interview to the Medical Administrator.

| _Wade G. Han... K. ___ | _as...wed_ | _4/27/06_ |
|---|---|---|
| Signature of ARO or Warden's/Supervisor's Designee | Title | Date |

---

### INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five days by filling in the information requested below and mailing it to the appropriate Deputy/Assistant Director. Keep in mind that you are appealing the decision to the original complaint. Do not list additional issues which are not part of your complaint.

WHY DO YOU NOT AGREE WITH THE RESPONSE? _With the problem solver who signed the informal resolution form failed to properly give the medical problem solver the chance to investigate this issue Ms. McCarthy / medical problem solver. The response was from the doctor himself. therefore his opinion was his opinion Even the staff receipt was not properly printed and staff code placed at Exibit #1 shows that improper policies was done according to AD-04-01. Medical failed to communicate_

| _Tommy Henderson_ | _93098_ | _5-25-05_ |
|---|---|---|
| Inmate Signature | ADC# | Date |

RECEIVED
OFFICE OF THE
INVESTIGATOR

JUL 05 2006

HEALTH & CORRECTIONAL PROGS.
AR DEPT. OF CORRECTION



# ACKNOWLEDGMENT OF GRIEVANCE

TO:      Inmate <u>Henderson, Tommy</u>      ADC# <u>93098</u>      Unit <u>Varner Unit</u>

FROM:    Wendy Kelley, Deputy Director

RE:      Receipt of Grievance   <u>VU06-00222</u>

DATE:    <u>June 6, 2006</u>

Please be advised, the appeal of your grievance dated <u>4/22/06</u>
              was received in my office on this date <u>6/2/06</u>

You will receive a response from this office by         _____

### OR

☐   This grievance is being returned to you because the time allowed for appeal has expired

☒   This grievance is being returned to you because you have not attached
              ☐ the informal resolution (Attachment 1)
              ☐ the original grievance form (Attachment 1a)
              ☐ the Warden's/Center Supervisor's Decision (Attachment 2)
              ☒ the Infirmary Response and/or the Mental Health Response
              ☐ a clear statement of appeal (Back of Attachment 2)
      Return your grievance with the checked items if you wish to continue the appeal process.

*Information inclosed attached*

RECEIVED
OFFICE OF THE
INVESTIGATOR

JUL 05 2006

HEALTH & CORRECTIONAL PROGS.
AR DEPT. OF CORRECTION

# ACKNOWLEDGMENT OF GRIEVANCE

TO:      Inmate <u>Henderson, Tommy</u>    ADC# <u>93098</u>    Unit <u>Varner</u>

FROM:   Wendy Kelley, Deputy Director

RE:      Receipt of Grievance  <u>VU06-00222</u>

DATE:   <u>July 9, 2006</u>

Please be advised, the appeal of your grievance dated <u>4/22/06</u> was received in my office on this date <u>7/5/06</u>

You will receive a response from this office by     <u>8/15/06</u>

### OR

☐   This grievance is being returned to you because the time allowed for appeal has expired

☐   This grievance is being returned to you because you have not attached
        ☐ the informal resolution (Attachment 1)
        ☐ the original grievance form (Attachment 1a)
        ☐ the Warden's/Center Supervisor's Decision (Attachment 2)
        ☐ the Infirmary Response and/or the Mental Health Response
        ☐ a clear statement of appeal (Back of Attachment 2)
Return your grievance with the checked items if you wish to continue the appeal process.

# CMS GRIEVANCE RESPONSE

GRIEVANCE#: VU-06-00222

| INMATE: Henderson, Tommy | ADC#: 093098 | DOB: 08/05/1962 |
|---|---|---|
| Facility: Diagnostic Hospital [D02] | | Barracks: HOSP |
| Grv. Date: 04/26/2006 | Date Infirmary Recd: 05/05/2006 | Response Date: 05/24/2006 |

Interview:   Required  ○     Deferred  ◉

**Inmate's Complaints: (Code:)**
Denial of Treatment (601) Dr Ahmed has delayed medical treatment on my left big toe from 10/17/05 to 4/16/06.

**Responses:**
According to ADC policy AR-1835 AD-9708 you have 15 days from the incident to grieve an issue. You are stating that there was medical negligence on Dr. Ahmed part, from the time of 10/17/05 to 4/16/06. In reviewing your medical record ,it indicates that you are a diabetic and have been treated for complaints of Diabetic ulcer on left great toe. You have been seen on numerous time by different physicians , from the time of your incarceration of Oct 05 up until April of 06, You were seen by Dr. Scott on 3/21/06 at DGU for second opinion of the left great toe. His recommendations were a Bone Scan and Orthopedic clinic. You were scheduled on 3/31/06 for Bone Scan of the left great toe ,You were seen on Ortho Clinic 4/05/06 by Dr. Lytle for left great toe,His recommendation was surgery ,to amputate the left great toe. You were seen by Dr. Ahmed on 4/17/06 for follow up care of left great toe ulcer. You stated that you didn't want the surgery ,and that you wanted a early release to be treated in the free world. It was explained to you that you needed to go to DGU for further management of condition since you didnt want surgery as recommended by Dr. Lytle. You refused to go to DGU and left the Infirmary ,with refusing to sign MSF 206.On 4/19/06 you agreed to have the surgery. You were NPO on 4/19/06 for surgery of the left great toe on 4/20/06. You are currently being housed at DGU Hospital for further treatment.

**Recommendations:**
Review ADC policy AR-1835 AD-9708

_Lau m Enty Lt/S.Isheuff Ht# 5/24/06_
_____
Responding Staff                                      Date

Follow Up Required?:   Yes  ○     No  ◉

RECEIVED
OFFICE OF THE
INVESTIGATOR

JUL 05 2006

HEALTH & CORRECTIONAL PROGS.
AR DEPT. OF CORRECTION

# CMS GRIEVANCE RESPONSE

GRIEVANCE#:  VU-06-00222

| **INMATE:** Henderson, Tommy | **ADC#:** 093098 | **DOB:** 08/05/1962 |
| **Facility:** Diagnostic Hospital [D02]  *wrong place* | | **Barracks:** HOSP |
| **Grv. Date:** 04/26/2006 | **Date Infirmary Recd:** 05/05/2006 | **Response Date:** 05/24/2006 |

**Interview:**   Required  ○   Deferred  ◉

**Inmate's Complaints: (Code:)**
Denial of Treatment (601) Dr Ahmed has delayed medical treatment on my left big toe from 10/17/05 to 4/16/06.

**Responses:**
According to ADC policy AR-1835 AD-9708 you have 15 days from the incident to grieve an issue. You are stating that there was medical negligence on Dr. Ahmed part, from the time of 10/17/05 to 4/16/06. In reviewing your medical record, it indicates that you are a diabetic and have been treated for complaints of Diabetic ulcer on left great toe. You have been seen on numerous time by different physicians, from the time of your incarceration of Oct 05 up until April of 06. You were seen by Dr. Scott on 3/21/06 at DGU for second opinion of the left great toe. His recommendations were a Bone Scan and Orthopedic clinic. You were scheduled on 3/31/06 for Bone Scan of the left great toe. You were seen on Ortho Clinic 4/05/06 by Dr. Lytle for left great toe. His recommendation was surgery, to amputate the left great toe. You were seen by Dr. Ahmed on 4/17/06 for follow up care of left great toe ulcer. You stated that you didn't want the surgery, and that you wanted a early release to be treated in the free world. It was explained to you that you needed to go to DGU for further management of condition since you didnt want surgery as recommended by Dr. Lytle. You refused to go to DGU and left the Infirmary, with refusing to sign MSF 206. On 4/19/06 you agreed to have the surgery, You were NPO on 4/19/06 for surgery of the left great toe on 4/20/06. You are currently being housed at DGU Hospital for further treatment.

**Recommendations:**
Review ADC policy AR-1835 AD-9708

_Laura M Eary Lt_ /S/ _D Asheriff H9H_ 5/24/06         (*Forged different date*)
Responding Staff                                      Date

**Follow Up Required?:**   Yes  ○   No  ◉

RECEIVED
OFFICE OF THE
INVESTIGATOR

JUL 1 7 2006

HEALTH & CORRECTIONAL PROGS.
AR DEPT. OF CORRECTION

Henderson, Tommy          93098          VU06-00~~220~~ *212*

INMATE NAME_____ADC_____GRIEVANCE_____

# DEPUTY/ASSISTANT DIRECTOR'S DECISION

You grieve that Dr. Ahmed failed to provide appropriate medical treatment for a diabetic ulcer on your left great toe that resulted in amputation.

This is a duplicate of your previous grievances against CMS physicians and members of the medical staff.  See my responses to those appeals.

I find nothing to indicate that treatment has been delayed or denied concerning the diabetic ulcer on your toe.  This ulcer was present when you were incarcerated and CMS physicians continued the perviously recommended treatment.

This is a duplicate appeal and your appeal has no merit.

_____          8/4/06
**WENDY KELLEY, DEPUTY DIRECTOR**          **DATE**

Please be advised that if you appeal this decision to the U. S. District Court a copy of this Deputy/Assistant Director must be attached to any petition or complaint or the Court must dismiss your case without notice.  You shall also be subject to paying filing fees pursuant to the Prison Litigation Act of 1995.

**GRIEVANCE FORM - (Attachment 1A)**  Exhibit #2 ①

UNIT/CENTER  Varner /DGU Hospital

| FOR OFFICE USE ONLY | |
|---|---|
| Grv. # | VU-06-00223 |
| Date Received | 4-26-06 |
| Grievance Code: | 600 |

PLEASE PRINT
Name  Tommy Henderson      ADC# 93098  Brks 15  Job Assignment  Po tech

IS THIS GRIEVANCE A MEDICAL GRIEVANCE?  Yes ✓  No _____    Exhibit #2

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**All complaints/concerns should first be handled informally before proceeding to the formal grievance procedure.**

**THE ORIGINAL INFORMAL RESOLUTION FORM MUST BE ATTACHED**

**Informal Action Taken**

Have you discussed this problem with your designated problem-solver? Yes ✓ No ___ If yes, give date  4-16-06
Why do you feel the informal resolution was unsuccessful?  No, Dr. Ahmed's answer to the
informal resolution was not properly answered thru CMS policy
problemsolver went to Dr. Himself, not going through proper
channels thru medical solver, Ms. McCarthy

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please give a **BRIEF**, clear statement of your grievance  This statement must be specific as to the complaint, **dates**, places, personnel involved, how **you** were affected and what you want to resolve the issue. **One issue** or incident per grievance. Additional pages or forms will **not** be allowed and if attached, will result in the automatic rejection of this grievance without content review.

On 4-16- Exhibit #2, informal resolution statement of complaint
was Requesting a 2nd opinion from my Regular Dr Alex
Dellinger from LR. I was wanting to get his opinion of my status
of my medical problem. My Left Big toe. Dr. Dellinger is the
1st Dr who looked and cared for my Diabetic Ulcer, I acted
me by the utmost care available, My foot was healing Real good
and no Bone Damage in my foot period. Since Oct 10th of 05
The problem has gotten worse because Dr. Ahmed, Dr Anderson
Dr Scott others, as a foreseeable intent to see Also, my original
informal Resolution is in my property back at Varner unit, because I
now I was on a med apt, on gate pass, turn into transfer. I have no property.

IS THIS AN EMERGENCY SITUATION?  YES ___  NO ___  If yes, why?

---

(An emergency situation is one in which you may be subject to a substantial risk of physical harm. It should not be declared for ordinary problems that are not of a serious nature.) If you marked yes, you may give this completed form to any officer or department employee who shall sign the attached emergency receipt, give you the receipt and deliver it without undue delay to the Warden/Center Supervisor or, in their absence, to the Unit/Center Assistant Warden. REPRISALS. If you are harmed or threatened because of your use of the grievance form, report it immediately to the Warden.

Tommy Henderson                                    4-22-06
**INMATE SIGNATURE**                              **DATE**

JUL 05 2006 (stamp)
HEALTH & CORRECTIONAL PROGS
AR DEPT OF CORRECTION
RECEIVED OFFICE OF INVESTIGATE

| (TO BE FILLED OUT BY THE RECEIVING OFFICER) | |
|---|---|

**RECEIPT FOR EMERGENCY SITUATIONS**
JUN 02 2006 (stamp)

OFFICER (Please Print) _____  Signature _____

FROM WHICH INMATE? _____    HEALTH & CORRECTIONAL PROGS    ADC# _____
AR DEPT OF CORRECTION

DATE: _____    TIME: _____

**INFORMAL RESOLUTION FORM (Attachment 1)**

UNIT/CENTER _____

PLEASE PRINT
Name _____    ADC# _____  Brks ____  Job Assignment _____

IS THIS AN EMERGENCY SITUATION? YES ___ NO ___ If yes, why? _____

(An emergency situation is one in which you may be subject to a substantial risk of physical harm. It should not be declared for ordinary problems that are not of a serious nature.) If you marked yes, you may give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. You will be given a copy of this receipt by the designated problem-solving staff. REPRISALS: If you are harmed or threatened because of your use of the grievance form, report it immediately to the Warden.

Give a **BRIEF** statement of your complaint/concern. This statement must be specific as to the complaint, **dates**, places, personnel involved and how **you** were affected. **One issue** or incident per complaint form. Additional pages or forms will **not** be allowed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Inmate Signature                                              Date

**THIS SECTION TO BE FILLED OUT BY STAFF ONLY.**

**STAFF RECEIPT AND ACTION TAKEN**

PRINT STAFF NAME (PROBLEM SOLVER)            Staff Code            Staff Signature / Date Received

Was this deemed an emergency? Yes _____ No _____

Was there a need to contact medical? Yes _____ No _____  If yes, give name of person contacted? _____

Describe action taken to resolve complaint, including dates. _____

_____

_____

_____

Was issue resolved? Yes _____ No _____    Does inmate agree that issue was resolved? Yes _____ No _____

_____                          _____
Staff Signature/Date                                Inmate Signature/Date

DISTRIBUTION: YELLOW – Inmate Receipt

(AFTER COMPLETION)    PINK – Problem Solver Copy    BLUE – Grievance Officer

ORIGINAL – Given back to the Inmate After Completion
HEALTH & CORRECTIONAL PROGS.
AR DEPT. OF CORRECTION

RECEIVED
OFFICE OF THE
INVESTIGATOR

JUL 05 2006

810-00  CORRECTIONAL PROGS
HEALTH & DEPT. OF CORRECTION

# GRIEVANCE ACKNOWLEDGEMENT

TO: Inmate  Henderson, Tommy

ADC #:  093098D

FROM: Rochelle, Tammy K

TITLE:  Grievance Officer

RE: Notification of Grievance Received.

GRIEVANCE #:  VU-06-00223

DATE:  04/26/2006

Please be advised, I have received your Grievance dated  04/22/2006  on  04/26/2006

You will receive communication from this office regarding the Grievance by  05/24/2006


_2·Rochelle_

Signature of Grievance Officer/ARO

## CHOOSE ONE OF THE FOLLOWING

⊙  This Grievance is of a medical nature and has been forwarded to the infirmary staff.

○  This Grievance has been determined to be an emergency situation, as you so indicated.

○  This Grievance has been determined to not be an emergency situation because you would not be subject to a substantial risk of personal injury or other serious irreparable harm. Your Grievance will be processed as a Non-Emergency.

_9. Harris for ADD_

Warden/Center Supervisor's
Signature

RECEIVED
OFFICE OF THE
INVESTIGATOR

JUL 05 2006

HEALTH & CORRECTIONAL PROGS.
AR DEPT. OF CORRECTION


Deputy/Assistant Director or
Director's Signature

RECEIVED
OFFICE OF THE
INVESTIGATOR

JUN 02 2006

HEALTH & CORRECTIONAL PROGS.
AR DEPT. OF CORRECTION

INMATE NAME: Henderson, Tommy       ADC #: 093098D    GRIEVANCE #: VU-06-00223

## WARDEN'S/CENTER SUPERVISOR'S DECISION

I have determined that your grievance is a medical matter. I have forwarded your grievance to the Medical Administrator who will provide a written response, and/or will interview you within twenty working days of the date I received your grievance. Should you receive no response within this time frame, or the response that you received is unsatisfactory, you may appeal to the Deputy Director for Health and Correctional Programs. If you have medical needs that you believe are urgent, put in a Sick Call Request, or send a Request for an interview to the Medical Administrator.

_Wad Co. Harris/and SLS_          _ADC cwed_          _4/27/06_
Signature of ARO or                  Title                Date
Warden's/Supervisor's Designee

## INMATE'S APPEAL

If you are not satisfied with this response, you may appeal this decision within five days by filling in the information requested below and mailing it to the appropriate Deputy/Assistant Director. Keep in mind that you are appealing the decision to the original complaint. Do not list additional issues which are not part of your complaint.

WHY DO YOU NOT AGREE WITH THE RESPONSE? _This issue was a medical matter, the problem solver should have forwarded the informal resolution to medical problemsolver not vest to the doctor himself, Policies and procedures of AD-04-01 where not followed Therefore, Dr. Inhrd's opinion was in opinion not what was investigated by the medical problem solver ms. Mccurdy. Nor was their the medical admin't natdro response to this grievance as shown by the grievance officer_

_Tommy Henderson_          _93098_          _5-25-06_
Inmate Signature            ADC#             Date

_& Nor was the informal resolution form attached to the grievance or a copy of it._

RECEIVED
OFFICE OF THE
INVESTIGATOR

JUL 05 2006

HEALTH & CORRECTIONAL PROGS.
AR DEPT. OF CORRECTION

RECEIVED
OFFICE OF THE
INVESTIGATOR

JUN 02 2006

HEALTH & CORRECTIONAL PROGS.

## CMS GRIEVANCE RESPONSE

GRIEVANCE#: VU-06-00223

| INMATE: Henderson, Tommy | ADC#: 093098 | | DOB: 08/05/1962 |
|---|---|---|---|
| Facility: Diagnostic Hospital [D02] | | | Barracks: HOSP |
| Grv. Date: 04/26/2006 | Date Infirmary Recd: 05/05/2006 | | Response Date: 05/24/2006 |

**Interview:** Required ○   Deferred ◉

**Inmate's Complaints: (Code:)**
Denial of Treatment (601)Since Oct of 05 my foot has got worst because of Dr Ahmed ,
Dr Anderson ,Dr. Scott.
Duplicate VU-06 00222

**Responses:**
According to ADC policy AR-1835 AD-9708 you have 15 days from the incident to grieve an
issue.You are stating that there was medical negligence on Dr. Ahmed part, from the time of 10/17/05
to 4/16/06. In reviewing your medical record ,it indicates that you are a diabetic and have been treated
for complaints of Diabetic ulcer on left great toe. You have been seen on numerous time by different
physicians , from the time of your incarceration of Oct 05 up until April of 06. You were seen by Dr.
Scott on 3/21/06 at DGU for second opinion of the left great toe. His recommendations were a Bone
Scan and Orthopedic clinic. You were scheduled on 3/31/06 for Bone Scan of the left great toe .You
were seen on Ortho Clinic 4/05/06 by Dr. Lytle for left great toe.His recommendation was surgery ,to
amputate the left great toe. You were seen by Dr. Ahmed on 4/17/06 for follow up care of left great toe
ulcer. You stated that you didn't want the surgery ,and that you wanted a early release to be treated in
the free world.It was explained to you that you needed to go to DGU for further management of
condition ,since you didnt want surgery as recommended by Dr. Lytle. You refused to go to DGU and
left the Infirmary ,with refusing to sign MSF 206.On 4/19/06 you agreed to have the surgery. You were
NPO on 4/19/06 for surgery of the left great toe on 4/20/06. You are currently being housed at DGU
Hospital for further treatment.

**Recommendations:**
Review ADC policy AR-1835 AD-9708

_Laura Mccity_    _B Strathbyasheriff HSA_    _5/24/06_
Responding Staff                                      Date

**Follow Up Required?:** Yes ○   No ◉

RECEIVED
OFFICE OF THE
INVESTIGATOR

JUL 05 2006

HEALTH & CORRECTIONAL PROGS.
AR DEPT. OF CORRECTION

# ACKNOWLEDGMENT OF GRIEVANCE

TO:      Inmate <u>Henderson, Tommy</u>    ADC# <u>93098</u>    Unit <u>Varner</u>

FROM:   Wendy Kelley, Deputy Director

RE:      Receipt of Grievance <u>VU06-00223</u>

DATE:   <u>July 9, 2006</u>

Please be advised, the appeal of your grievance dated <u>4/22/06</u>
was received in my office on this date <u>7/5/06</u>

You will receive a response from this office by     <u>8/15/06</u>

### OR

☐   This grievance is being returned to you because the time allowed for appeal has expired

☐   This grievance is being returned to you because you have not attached
        ☐ the informal resolution (Attachment 1)
        ☐ the original grievance form (Attachment 1a)
        ☐ the Warden's/Center Supervisor's Decision (Attachment 2)
        ☐ the Infirmary Response and/or the Mental Health Response
        ☐ a clear statement of appeal (Back of Attachment 2)
Return your grievance with the checked items if you wish to continue the appeal process.

Back of Attachment II

Henderson, Tommy          93098          VU06-00223
INMATE NAME_____ADC_____GRIEVANCE_____

# DEPUTY/ASSISTANT DIRECTOR'S DECISION

This grievance exceeds the time frame for appeal to my office.

The CMS staff and my office have addressed the same complaints numerous times in other grievances and appeals.  No further investigation is needed.

This appeal has no merit.

_____          ___8|4|06___
WENDY KELLEY, DEPUTY DIRECTOR                DATE

Please be advised that if you appeal this decision to the U. S. District Court a copy of this Deputy/Assistant Director must be attached to any petition or complaint or the Court must dismiss your case without notice.  You shall also be subject to paying filing fees pursuant to the Prison Litigation Act of 1995.

**GRIEVANCE FORM - (Attachment 1A)**   Exhibit #4
(1)

UNIT/CENTER  _Varner / DCU Hospital_

| FOR OFFICE USE ONLY | |
|---|---|
| Grv. # | VSM-06-01079 |
| Date Received | 6-1-06 |
| Grievance Code: | 600 |

**PLEASE PRINT**
Name _Tommy Henderson_  ADC# _93098_  Brks _3.13_  Job Assignment _Unassigned_

IS THIS GRIEVANCE A MEDICAL GRIEVANCE?  Yes _X_  No ___

*********************************************************************************

**All complaints/concerns should first be handled informally before proceeding to the formal grievance procedure.**

**THE ORIGINAL INFORMAL RESOLUTION FORM MUST BE ATTACHED**

**Informal Action Taken**

Have you discussed this problem with your designated problem-solver? Yes _X_ No ▨ If yes, give date _4-15-06_

Why do you feel the informal resolution was unsuccessful? _Sgt who took the resolution on 4-15-06 never returned or forward my resolutions in the timely manner. Varner Infermary has never forward the the issue to me while I'm here at DFU Hospital since April 20th of 2006 to present._

*********************************************************************************

Please give a **BRIEF**, clear statement of your grievance. This statement must be specific as to the complaint, **dates**, places, personnel involved, how **you** were affected and what you want to resolve the issue. **One issue** or incident per grievance. Additional pages or forms will **not** be allowed and if attached, will result in the automatic rejection of this grievance without content review.   *Just got my property to me today 5-1-06

_On 4-15-06 I have notice to Intent to sue Dr. Ahmed of Varner medical director, ▨ for the statement "I claimed in Exhibit #4 which I do not have the original resolution as I mentioned above. From the complaint of my medical issues I feel as though I have been given a deliberate indifference of a Dr's Decisions to treat me in a unqualified and unskilled and trained specialist for treating my diabetic Ulcer on my left foot From the dates of 10-17-05 to 4-15-06. Also not sending me to the facility other than DFU for more treatments of IV antibiodics that I clearly needed plus no blood drawn for what levels I needed to give a more indeepth knowledge of what I need._

IS THIS AN EMERGENCY SITUATION? YES ___ NO _X_ If yes, why? _____

RECEIVED
OFFICE OF THE
INVESTIGATOR

AUG 01 2006

HEALTH & CORRECTIONAL PROGS.
AR DEPT. OF CORRECTION

(An emergency situation is one in which you may be subject to a substantial risk of physical harm. It should not be declared for ordinary problems that are not of a serious nature.) If you marked yes, you may give this completed form to any officer or department employee who shall sign the attached emergency receipt, give you the receipt and deliver it without undue delay to the ARO, the Warden/Center Supervisor or designee, or the Unit/Center Assistant Warden. REPRISALS: If you are harmed or threatened because of your use of the grievance form, report it immediately to the Warden.

_Tommy Henderson_
**INMATE SIGNATURE**

RECEIVED
OFFICE OF THE
INVESTIGATOR

_5-1-06 @ 8:05pm_
**DATE**

(TO BE FILLED OUT BY THE RECEIVING OFFICER)

JUL 05 2006

**RECEIPT FOR EMERGENCY SITUATIONS**

HEALTH & CORRECTIONAL PROGS.
AR DEPT. OF CORRECTION

OFFICER (Please Print) _____ Signature _____

FROM WHICH INMATE? _____ ADC# ____

DATE: _____ TIME: _____

RECEIVED
5/2/06
RCH

**INFORMAL RESOLUTION FORM (Attachment 1)**

Copy of the yellow copy   Exhibit # 4

**UNIT/CENTER** _____

**PLEASE PRINT**
Name _____   ADC# _____   Brks _____   Job Assignment _____

IS THIS AN EMERGENCY SITUATION? YES ___ NO ___ If yes, why? _____

(An emergency situation is one in which you may be subject to a substantial risk of physical harm. It should not be declared for ordinary problems that are not of a serious nature.) If you marked yes, you may give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. You will be given a copy of this receipt by the designated problem-solving staff. REPRISALS: If you are harmed or threatened because of your use of the grievance form, report it immediately to the Warden.

Give a **BRIEF** statement of your complaint/concern. This statement must be specific as to the complaint, **dates**, places, personnel involved and how **you** were affected. **One issue** or incident per complaint form. Additional pages or forms will **not** be allowed.

_[handwritten statement illegible]_

Inmate Signature _____   Date _____

## THIS SECTION TO BE FILLED OUT BY STAFF ONLY.

**STAFF RECEIPT AND ACTION TAKEN**

**PRINT** STAFF NAME (PROBLEM SOLVER) _____   Staff Code _____   Staff Signature / Date Received _____

Was this deemed an emergency? Yes _____ No _____

Was there a need to contact medical? Yes _____ No _____   If yes, give name of person contacted? _____

Describe action taken to resolve complaint, including dates. _____

Was issue resolved? Yes ___ No ___   Does inmate agree that issue was resolved? Yes _____ No _____

_____ Signature/Date   _____ Inmate Signature/Date

RECEIVED OFFICE OF THE INVESTIGATOR
DISTRIBUTION: YELLOW – Inmate Receipt
AUG 0 1 2006
(AFTER COMPLETION)   PINK – Problem Solver Copy   BLUE – Grievance Officer
HEALTH & CORRECTIONAL PROGS
AR DEPT. OF CORRECTION   ORIGINAL – Given back to the inmate After Completion

RECEIVED OFFICE OF THE INVESTIGATOR
810-00
JUL 0 5 2006

## CMS GRIEVANCE RESPONSE

GRIEVANCE#:  VSM06-01079

| INMATE: Henderson, Tommy | ADC#: 093098 | DOB: 08/05/1962 |
|---|---|---|
| Facility: Varner Unit [F01] | | Barracks: BK-15 |
| Grv. Date: 06/01/2006 | Date Infirmary Recd: 06/15/2006 | Response Date: 06/22/2006 |

Interview:   Required  ⦿     Deferred  ○

**Inmate's Complaints: (Code:)**
Denial of Treatment (601)Dr.Ahmed has delayed medical treatment on my big toe from 10/17/05 till 4/15/06.9( Dupilcate VU-06-00341)

**Responses:**
According to ADC policy AR-1835 AD-9708 you have 15 days from the incident to grieve an issue. You are stating that there was medical negligence on Dr. Ahmed part, from the time of 10/17/05 to 4/16/06. In reviewing your medical record ,it indicates that you are a diabetic and have been treated for complaints of Diabetic ulcer on left great toe. You have been seen on numerous time by different physicians , from the time of your incarceration of Oct 05 up until April of 06. You were seen by Dr. Scott on 3/21/06 at DGU for second opinion of the left great toe. His recommendations were a Bone Scan and Orthopedic clinic. You were scheduled on 3/31/06 for Bone Scan of the left great toe .You were seen on Ortho Clinic 4/05/06 by Dr. Lytle for left great toe.His recommendation was surgery ,to amputate the left great toe. You were seen by Dr. Ahmed on 4/17/06 for follow up care of left great toe ulcer. You stated that you didn't want the surgery ,and that you wanted a early release to be treated in the free world. It was explained to you that you needed to go to DGU for further management of condition since you didnt want surgery as recommended by Dr. Lytle. You refused to go to DGU and left the Infirmary ,with refusing to sign MSF 206.On 4/19/06 you agreed to have the surgery. You were NPO on 4/19/06 for surgery of the left great toe on 4/20/06. You are currently being housed at DGU Hospital for further treatment.You are currently being given adequate Post OP Care of the amputated great toe ,and mobile by wheelchair until further orders are received .If you haveany further issues please submit a request for interview.

**Recommendations:**
Reveiw ADC policy AR -1835 AD-9708 —

_____     Neshekpt. 141A        6/22/06
Responding Staff                                                    Date

Follow Up Required?:   Yes  ○     No  ⦿

RECEIVED
OFFICE OF THE
INVESTIGATOR

JUL 17 2006

HEALTH & CORRECTIONAL PROGS
AR DEPT. OF CORRECTIONS

INMATE NAME: Henderson, Tommy    ADC #: 093098D    GRIEVANCE #: VSM06-01079

## WARDEN'S/CENTER SUPERVISOR'S DECISION

I have determined that your grievance is a medical matter. I have forwarded your grievance to the Medical Administrator who will provide a written response, and/or will interview you within twenty working days of the date I received your grievance. Should you receive no response within this time frame, or the response that you received is unsatisfactory, you may appeal to the Deputy Director for Health and Correctional Programs. If you have medical needs that you believe are urgent, put in a Sick Call Request, or send a Request for an interview to the Medical Administrator.

| | | 6-5-2006 |
|---|---|---|
| Signature of ARO or Warden's/Supervisor's Designee | Title | Date |

RECEIVED
OFFICE OF THE
INVESTIGATOR

**INMATE'S APPEAL**

AUG 01 2006

HEALTH & CORRECTIONAL PROGS.
AR DEPT. OF CORRECTION
If you are not satisfied with this response, you may appeal this decision within five days by filling in the information requested below and mailing it to the appropriate Deputy/Assistant Director. Keep in mind that you are appealing the decision to the original complaint. Do not list additional issues which are not part of your complaint.

WHY DO YOU NOT AGREE WITH THE RESPONSE? With merit. Because CMS, And Varner unit staff failed to go by AD-04-01 Rules & polices by foward the medical issue to the problem solver, The Sgt who investigated the issue went straight to the Dr. Am hed, not medical problem solver, so they can never given investigate, Also the reply of the response was taken I dont have a response, also the

RECEIVED
OFFICE OF THE
INVESTIGATOR
Grievance # is VSM not VU #

| Inmate Signature | ADC# | Date |
|---|---|---|

JUL 05 2006
HEALTH & CORRECTIONAL PROGS.
AR DEPT. OF CORRECTION

→ I was never in VSM or lock up, This error lies on grievance staff of placing a wrong # and Therefore grievance with merit.

Attachment IV

# ACKNOWLEDGMENT OF GRIEVANCE

TO:    Inmate Henderson, Tommy      ADC# 93098      Unit Varner Supermax

FROM:    Wendy Kelley, Deputy Director

RE:    Receipt of Grievance  VSM06-01079

DATE:    July 9, 2006

RECEIVED
OFFICE OF THE
INVESTIGATOR

Please be advised, the appeal of your grievance dated 5/1/06
was received in my office on this date 7/5/06

AUG 01 2006

HEALTH & CORRECTIONAL PROGS.
AR DEPT. OF CORRECTION

You will receive a response from this office by

### OR

☐    This grievance is being returned to you because the time allowed for appeal has expired

☐    This grievance is being returned to you because you have not attached
☐ the informal resolution (Attachment 1)
☐ the original grievance form (Attachment 1a)
☐ the Warden's/Center Supervisor's Decision (Attachment 2)
☒ the Infirmary Response and/or the Mental Health Response
☐ a clear statement of appeal (Back of Attachment 2)
Return your grievance with the checked items if you wish to continue the appeal process.

Infirmary has failed to return the Response
due to Staff of ADC loses the original one or
The paper trail of the issue has been missplaced

7-21-06    TcH.

Returning the complaints.

# ACKNOWLEDGMENT OF GRIEVANCE

TO:      Inmate Henderson, Tommy      ADC# 93098      Unit Varner Unit

FROM:    Wendy Kelley, Deputy Director

RE:      Receipt of Grievance  VSM06-01079

DATE:    August 2, 2006

Please be advised, the appeal of your grievance dated 5/1/06
            was received in my office on this date 8/1/06

You will receive a response from this office by            _____

## OR

☒   This grievance is being returned to you because the time allowed for appeal has expired

☐   This grievance is being returned to you because you have not attached
☐ the informal resolution (Attachment 1)
☐ the original grievance form (Attachment 1a)
☐ the Warden's/Center Supervisor's Decision (Attachment 2)
☐ the Infirmary Response and/or the Mental Health Response
☐ a clear statement of appeal (Back of Attachment 2)
Return your grievance with the checked items if you wish to continue the appeal process.

Evidence #

Evidence #

RECEIVED AUG 15 2008

5

Tommy Henderson # 93098
Varner Unit

...artment of Correction
P. O. Box 8707
Bluff, Arkansas 71611

DU0600094
Exhibit #7

5/

Tommy Henderson # 93098
Diag. Unit



Arkansas Department of Correction
P. O. Box 8707
Pine Bluff, Arkansas 71611

Evidence #

Evidence #

DV-06-00057
Exhibit # 14

# 93098

Tommy Diaz
Varner Unit

DV-06-00064
Exhibit # 16

93098

Tommy Diaz
Varner Unit

**ADC**
*honor and integrity in public service*
**Arkansas Department of Correction**
P. O. Box 8707
Pine Bluff, Arkansas 71611

**ADC**
*honor and integrity in public service*
**Arkansas Department of Correction**
P. O. Box 8707
Pine Bluff, Arkansas 71611

Evidence #

Evidence #

DU 06 - 00063
Exhibit # 17

# 03098

DU 06 00057
Exhibit #18

# 0309b

Correction
,07
.ansas 71611

**ADC**
*honor and integrity in public service*
**Arkansas Department of Correction**
P. O. Box 8707
Pine Bluff, Arkansas 71611

Evidence #

Evidence #

DU 06 000 62

Exhibit — #9

# 03098

# 03098





Arkansas Department of Correction
P. O. Box 8707
Pine Bluff, Arkansas 71611

Arkansas Department of Correction
P. O. Box 8707
Pine Bluff, Arkansas 71611

AUG 15 2006

**ADC**

*honor and integrity in public service*

artment of Correction
). Box 8707
, Arkansas 71611

Evidence #

13

AUG 15 2006

Tommy Henderson # 93098
Varner Unit

## GRIEVANCE FORM - (Attachment 1A)

Exhibit 5 (1)

UNIT/CENTER _Vuenee / D&V Hospital_

FOR OFFICE USE ONLY

Grv. # VU-06-00341

Date Received 6-1-06

Grievance Code: 600

PLEASE PRINT
Name _Tommy Henderson_ ADC# _93098_ Brks _3B_ Job Assignment _Unassigned_

IS THIS GRIEVANCE A MEDICAL GRIEVANCE?   Yes _X_   No _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### All complaints/concerns should first be handled informally before proceeding to the formal grievance procedure.

## THE ORIGINAL INFORMAL RESOLUTION FORM MUST BE ATTACHED

### Informal Action Taken

Have you discussed this problem with your designated problem-solver? Yes _X_ No __ If yes, give date _4-15-06_

Why do you feel the informal resolution was unsuccessful? _medical issue was to be address_
_and get forward Re resolution to medical Dept. my yellow copy_
_is all I have of who signed my resolution, he failed to properly_
_filled out the section by staff only,_

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please give a **BRIEF**, clear statement of your grievance. This statement must be specific as to the complaint, **dates**, places, personnel involved, how **you** were affected and what you want to resolve the issue. **One issue** or incident per grievance. Additional pages or forms will **not** be allowed and if attached, will result in the automatic rejection of this grievance without content review.

_On 4-15-06 my request to have an 2nd opinion from my_
_free world Dr. Alexp Dellinger who previously was under his_
_care for my current medical problem of Diabetic Ulcer, I_
_was denied to see him (Dr. Dellinger) per Dr. Roland Anderson_
_and Dr. Ahmed due to CMS policies and ways to save_
_money. Besicly a "Yes" man to who ever is above him from_
_CMS adminstration and those who are in charge above him,_
_still do not have original's of the resolutions receipt or_
_issues resolued not given or forward the response due to_
_my medical transfer to D&U from having surgery at_
_SRMC out-patient services_

RECEIVED
OFFICE OF THE
INVESTIGATOR

IS THIS AN EMERGENCY SITUATION?   YES ___  NO _X_  If yes, why? _____

AUG 01 2006

(An emergency situation is one in which you may be subject to a substantial risk of physical harm. It should not be used for complaints that are not of a serious nature.) If you marked yes, you may give this completed form to the officer or department supervisor, or in his/her absence, to the attached emergency receipt, give you the receipt and deliver it without undue delay to the Warden/Center Supervisor or, in their absence, to the Unit/Center Assistant Warden. REPRISALS: If you are harmed or threatened because of your use of the grievance form, report it immediately to the Warden.

HEALTH & CORRECTIONAL PROGS.

JUL 05 2006

_Tommy Henderson_                    5-1-06 @ 8:15 pm
**INMATE SIGNATURE**                 **DATE**

HEALTH & CORRECTIONAL PROGS.
AR DEPT. OF CORRECTION

### (TO BE FILLED OUT BY THE RECEIVING OFFICER)

## RECEIPT FOR EMERGENCY SITUATIONS

RECEIVED
5/2/06
Sent to KH

OFFICER (Please Print) _____  Signature _____

FROM WHICH INMATE? _____  ADC# _____

DATE: _____  TIME: _____

*my copy*
*medical*
*Exhibit # 5*
*Please Return form (OD)*
*10-1-06*

## INFORMAL RESOLUTION FORM (Attachment 1)

UNIT/CENTER _Varner_

PLEASE PRINT
Name _Tommy Henderson_                    ADC# _93098_ Brks _15_ Job Assignment _Biotech_

IS THIS AN EMERGENCY SITUATION? YES ___ NO ___ If yes, why? _____

(An emergency situation is one in which you may be subject to a substantial risk of physical harm. It should not be declared for ordinary problems that are not of a serious nature.) If you marked yes, you may give this completed form to the designated problem-solving staff, who will sign the attached emergency receipt. You will be given a copy of this receipt by the designated problem-solving staff. REPRISALS: If you are harmed or threatened because of your use of the grievance form, report it immediately to the Warden.

Give a **BRIEF** statement of your complaint/concern. This statement must be specific as to the complaint, **dates**, places, personnel involved and how **you** were affected. **One issue** or incident per complaint form. Additional pages or forms will **not** be allowed.

On 4-15-06, DR. Amhed was given a Request by me myself
Tommy Henderson to have a 2nd opinion to my Free world
Dr. Alex Dellinger of LR. Ar. Expert opinion is Requested
to have DR. Dellinger Recoed his report to my medical
history of what Damage, Affected issues that have Resulted
in Bone Damage to the Big left Toe from previous history
of medical negligence, Delay of treatment, unreasonable care
Failing himself to give any orders to have antibodities, or
other necessary medical meds to stopper slow the infection in my
left foot area, possibly moving up my left leg, Amputation is
DR. Little's opinion for A.S.A.P. I would like 2nd opinion A.S.A.P.

_Tommy Henderson_                                        _4-15-06_
Inmate Signature                                          Date

RECEIVED
OFFICE OF THE
INVESTIGATOR
AUG 01 2006
AR DEPT. OF CORRECTION

## THIS SECTION TO BE FILLED OUT BY STAFF ONLY.

**STAFF RECEIPT AND ACTION TAKEN**

PRINT STAFF NAME (PROBLEM SOLVER)          Staff Code          Staff Signature / Date Received

Was this deemed an emergency? Yes ___ No ___
Was there a need to contact medical? Yes ___ No ___ If yes, give name of person contacted? _____
Describe action taken to resolve complaint, including dates. _____

Was issue resolved? Yes ___ No ___ Does inmate agree that issue was resolved? Yes ___ No ___

RECEIVED
OFFICE OF THE
INVESTIGATOR
JUL 05 2006
HEALTH & CORRECTIONAL PROGS.
AR DEPT OF CORRECTION

Staff Signature/Date _____          Inmate Signature/Date _____

**DISTRIBUTION: YELLOW** – Inmate Receipt

**(AFTER COMPLETION) PINK** – Problem Solver Copy   **BLUE** – Grievance Officer
**ORIGINAL** – Given back to the Inmate After Completion

810-00

~~Case 5:06-cv-00250-SWW   Document 2   Filed 09/26/06   Page 71 of 71~~

# CMS GRIEVANCE RESPONSE

GRIEVANCE#: VU-06-00341

| INMATE: Henderson, Tommy | ADC#: 093098 | DOB: 08/05/1962 |
|---|---|---|
| Facility: Varner Unit [F01] | | Barracks: BK15 |
| Grv. Date: 06/01/2006 | Date Infirmary Recd: 06/15/2006 | Response Date: 06/22/2006 |

Interview:   Required  ⦿     Deferred  ○

**Inmate's Complaints: (Code:)**
Denial of Treatment (601)Dr. Ahmed has delayed medical treatment on left big toe ,and requesting 2nd from his free world doctor.

**Responses:**
According to ADC policy AR-1835 AD-9708 you have 15 days from the incident to grieve an issue.You are stating that there was medical negligence on Dr. Ahmed part, from the time of 10/17/05 to 4/16/06. In reviewing your medical record ,it indicates that you are a diabetic and have been treated for complaints of Diabetic ulcer on left great toe. You have been seen on numerous time by different physicians , from the time of your incarceration of Oct 05 up until April of 06. You were seen by Dr. Scott on 3/21/06 at DGU for second opinion of the left great toe. His recommendations were a Bone Scan and Orthopedic clinic. You were scheduled on 3/31/06 for Bone Scan of the left great toe .You were seen on Ortho Clinic 4/05/06 by Dr. Lytle for left great toe.His recommendation was surgery ,to amputate the left great toe. You were seen by Dr. Ahmed on 4/17/06 for follow up care of left great toe ulcer. You stated that you didn't want the surgery ,and that you wanted a early release to be treated in the free world. It was explained to you that you needed to go to DGU for further management of condition since you didn't want surgery as recommended by Dr. Lytle. You refused to go to DGU and left the Infirmary ,with refusing to sign MSF 206.On 4/19/06 you agreed to have the surgery. You were NPO on 4/19/06 for surgery of the left great toe on 4/20/06. You were currently being housed at DGU Hospital for further treatment .You are currently being given adequate Post OP Care of the amputated great toe,and mobile by wheelchair until further orders received. If you have any further issues or concerns please feel free to contact me.

**Recommendations:**
Review ADC policy AR-1835 AD-9708

_____    Dashcraft, HSA    6/22/06
Responding Staff                                           Date

Follow Up Required?:  Yes  ○    No  ⦿
July 7th eye clinic for Retina

RECEIVED
OFFICE OF
INVESTIGATIONS
JUL 17 2006
HEALTH & CORRECTIONS
AR DEPT. OF CORRECTIONS.