IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

TOMMY HENDERSON,
ADC #93098                                                                                       PLAINTIFF

5:06CV00250SWW/HDY

ROLAND ANDERSON, et al.                                                              DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge Susan Webber Wright.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

1

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite 402
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. Introduction

This matter is before the Court on the defendants' motion to dismiss plaintiff's complaint based on his status as a "three-striker" within the meaning of the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(g) (DE #27). Plaintiff filed a response in opposition to the motion, claiming that his claim concerns defendants' deliberate indifference to his serious physical injury involving an infection on his big toe which subsequently resulted in an amputation. (DE #32).

Plaintiff is a state inmate currently incarcerated at the North Central Unit of the Arkansas Department of Correction (ADC). He filed this action pursuant to 42 U.S.C. § 1983 against defendants, alleging deliberate indifference to his serious medical needs while he was incarcerated at the Varner Unit of the ADC. Specifically, plaintiff alleges that when he arrived at the ADC in October, 2005, he was being treated for a diabetic ulcer on his left big toe, which was "almost healed." Plaintiff alleges that defendants' failure to adequately treat plaintiff's toe sore aggravated his infection and led to the amputation of his toe in April, 2006.

### II. Motion to Dismiss

In support of their motion, defendants state that plaintiff should not be permitted to continue to proceed <u>in forma pauperis</u> in this action, based on the "three strikes" provision of the PLRA. Defendants state that three prior cases filed by plaintiff have been dismissed for failure to

2

state a claim, and that plaintiff should not be able to continue to proceed with this lawsuit without paying the $350.00 filing fee. In further support of the motion defendants cite plaintiff's prior cases which were dismissed for failure to state a claim: <u>Henderson v. Keith</u>, 95-5041 (W.D AR) (April 24, 2995), <u>Henderson v. Miller</u>, 95-5082 (W.D.AR) (July 12, 1995), and <u>Henderson v. Johnson</u>, 4:05cv1315 (E.D.AR ) (January 4, 2006). Defendants also state that plaintiff's complaint should be dismissed for failure to exhaust his administrative remedies, as required by the PLRA.

In his response, plaintiff states that his medical claims are serious, in that defendants' failure to adequately treat his problem resulted in the toe amputation. He also claims to have exhausted his administrative remedies with respect to all his claims.

### III.  Hearing

Based on the nature of the parties' filings, the Court determined that a considerable question remained concerning whether plaintiff's allegations in fact involved imminent danger of serious injury, which is an exception to the "three-strikes" rule. Therefore, a hearing on the defendants' motion was conducted on February 6, 2007, to determine whether, at the time of the filing of this complaint on September 28, 2006, plaintiff was in imminent danger of serious harm within the meaning of the statute. <u>See</u> <u>Ashley v. Dilworth</u>, 147 F.3d 715, 716 (8th Cir. 1998), where the Court held that "an otherwise ineligible prisoner is only eligible to proceed IFP if he is in imminent danger *at the time of filing*. " Based on the testimony of the parties and the evidence presented, the Court issues the following Proposed Findings and Recommendation.

According to the testimony at the hearing, plaintiff has suffered from diabetes for more than seventeen years, and had been treated by a "free-world" podiatrist for the diabetic ulcer on his big toe prior to re-entering the ADC in October, 2005.[1] At that time, plaintiff testified that he

---

[1] Plaintiff testified that he had previously been incarcerated in the ADC in the 1990s.

weighed in excess of 250 pounds.  Plaintiff was examined by nurse practitioners upon his entry and told them about his diabetes and the problems associated with his toe.  Plaintiff testified that he was given the treatment of betadine soaks and foot dressings.  Plaintiff was also treated shortly thereafter by a physician at the Varner Unit, who continued the betadine treatments.  Plaintiff stated that he was required to walk two-three miles per week and that his foot started swelling, causing tremendous throbbing and pain.

By the end of November, 2005, plaintiff stated that his infection had worsened and he requested that he be moved to a barracks without stairs.  Although this request was granted, plaintiff stated that he was still required to walk back and forth to lunch, dinner, church, and his treatment calls, all of which further aggravated his condition.  Plaintiff complained that a culture was not taken of his toe from October through December 20, 2005, and acknowledged that he was provided medication to keep his toe area clean.

In late December, plaintiff was examined by a representative of Felix Limb and Brace in order to receive an insole for his shoe which would shift the weight away from his big toe area.  Plaintiff testified that the insole did not accomplish its purpose, and that the only time his foot was not swollen, was at night when he elevated it.  In February, 2006, plaintiff was transferred to the Diagnostic Unit for long-term antibiotics and a culture.  He was then transferred to the Cummins Unit Infirmary a few days later to continue the antibiotic treatment.  However, upon his return to Varner, he again was required to walk and his foot began swelling again.  Plaintiff was placed in a wheelchair in March, 2006 and his big toe was amputated on April 20, 2006 at the Jefferson Regional Medical Center by an orthopedic surgeon, Dr. Lytle, who is not employed by CMS.  After his surgery, Dr. Lytle ordered orthopedic shoes for the plaintiff and arranged for plaintiff to have follow-up exams with him every six weeks.  Plaintiff testified that these exams have continued, except in January when he was hospitalized for gallbladder surgery.  The exam by Dr.

Lytle which was missed in January is scheduled to be "made up" in the next few weeks. Since the surgery, plaintiff testified that his toe has healed, but that he continues to experience problems with his foot such as phantom and diabetic nerve pain, a knot on his foot, and a fallen arch.

Defendants presented the testimony of Dr. Patrick Arnold, the Associate Regional Medical Director for Correctional Medical Services, Inc. (CMS), the contracted medical provider for the ADC. Dr. Arnold, a physician trained in internal medicine, testified that he has reviewed plaintiff's medical records and also examined him in August, 2006. A review of plaintiff's records following the surgery and through the time the complaint was filed on September 28, 2006 shows that plaintiff's foot healed with no signs of swelling or inflammation. Plaintiff was examined on June 6, July 19, July 27, August 17, September 13, and September 20, 2006 and received x-rays and a MRI test during that time (Defendants' Ex. 1, pp. 1-18). Dr. Patrick testified that he discussed plaintiff's medical condition with three other physicians, and they all agreed that there was no evidence of an active infection in plaintiff's foot. He also stated that there has not been a medical diagnosis of a fallen arch and that diabetic patients typically experience numbness, tingling and pain associated with diabetic peripheral neuropathy. He also stated that the healing process following the amputation could result in the development of scar tissue, but that he did not see anything out of the ordinary on plaintiff's foot. Dr. Arnold concluded that plaintiff was not in imminent danger of serious physical injury following the amputation of his big toe.

## IV. Analysis

The "three strikes" provision of the PLRA states as follows:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous,

>malicious, or fails to state a claim upon which relief may be granted, <u>unless the prisoner is under imminent danger of serious physical injury</u>.

Emphasis added.

Plaintiff claims that he should be able to proceed in this action, <u>in forma pauperis</u>, because defendants placed him in imminent danger of serious physical injury. However, according to <u>Ashley v. Dilworth</u>, <u>supra</u>, 147 F.3d at 716, "allegations that the prisoner has faced imminent danger in the past are insufficient to trigger this exception to § 1915(g)." While plaintiff alleges deliberate indifference by the defendants from October, 2005 through the time of his toe amputation in April, 2006, it is clear from the pleadings, plaintiff's testimony at the hearing, and his medical records, that he was not in imminent danger of serious physical injury at the time he filed the complaint on September 28, 2006. In fact, plaintiff testified at the hearing that his toe has healed, and that his current complaints center on the pain he still suffers on his left foot and his fear that he may face more amputations in the future.

Therefore, the Court finds that based on the allegations of plaintiff's complaint, he is complaining about an event which occurred in the past, which does not constitute an allegation of imminent danger within the meaning of the PLRA. Accordingly,

IT IS, THEREFORE, RECOMMENDED that defendants' motion to dismiss plaintiff's complaint based on his "three-strikes" status (DE #27) be GRANTED, and plaintiff's complaint be DISMISSED without prejudice. Should plaintiff wish to continue this case, he shall submit the statutory filing fee of $350.00 to the Clerk, noting the above case style and number within ten (10) days of the date of this Order, along with a motion to reopen the case. Upon receipt of the motion and full payment, the case will be reopened.

IT IS SO RECOMMENDED this ___7___ day of February, 2007.

_____
United States Magistrate Judge